[No. S178914. Jan. 13, 2011.]

MICHAEL CASSEL, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P., et al.,
Real Parties in Interest.

114

## Counsel

Makarem & Associates, Ronald W. Makarem, Peter M. Kunstler, Jamie R. Greene; Mink Law Firm and Lyle R. Mink for Petitioner.

Sauer & Wagner, Gerald L. Sauer and Laurie B. Hiller for John Porter and Deborah Blair Porter as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Haight Brown & Bonesteel, Peter Q. Ezzel, Nancy E. Lucas and Stephen M. Caine for Real Parties in Interest.

Robie & Matthai, Kyle Kveton and Steven Fleischman for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Real Parties in Interest.

## Opinion

**BAXTER, J.**—In order to encourage the candor necessary to a successful mediation, the Legislature has broadly provided for the confidentiality of things spoken or written in connection with a mediation proceeding. With specified statutory exceptions, neither "evidence of anything said," nor any "writing," is discoverable or admissible "in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which . . . testimony can be compelled to be given," if the statement was made, or the writing was prepared, "for the purpose of, in the course of, or pursuant to, a mediation . . . ." (Evid. Code, § 1119, subds. (a), (b).)[1] "All communications,

---

[1] All further unlabeled statutory references are to the Evidence Code.

negotiations, or settlement discussions by and between participants in the course of a mediation . . . shall remain confidential." (*Id.*, subd. (c).) We have repeatedly said that these confidentiality provisions are clear and absolute. Except in rare circumstances, they must be strictly applied and do not permit judicially crafted exceptions or limitations, even where competing public policies may be affected. (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 580 [80 Cal.Rptr.3d 83, 187 P.3d 934] (*Simmons*); *Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 194 [51 Cal.Rptr.3d 871, 147 P.3d 653] (*Fair*); *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 415–416 [15 Cal.Rptr.3d 643, 93 P.3d 260] (*Rojas*); *Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 13–14, 17 [128 Cal.Rptr.2d 642, 25 P.3d 1117] (*Foxgate*).)

The issue here is the effect of the mediation confidentiality statutes on private discussions between a mediating client and attorneys who represented him in the mediation. Petitioner Michael Cassel agreed in mediation to the settlement of business litigation to which he was a party. He then sued his attorneys for malpractice, breach of fiduciary duty, fraud, and breach of contract. His complaint alleged that by bad advice, deception, and coercion, the attorneys, who had a conflict of interest, induced him to settle for a lower amount than he had told them he would accept, and for less than the case was worth.

Prior to trial, defendant attorneys moved, under the statutes governing mediation confidentiality, to exclude all evidence of private attorney-client discussions immediately preceding, and during, the mediation concerning mediation settlement strategies and defendants' efforts to persuade petitioner to reach a settlement in the mediation. The trial court granted the motion, but the Court of Appeal vacated the trial court's order.

The appellate court majority reasoned that the mediation confidentiality statutes are intended to prevent the damaging use *against a mediation disputant* of tactics employed, positions taken, or confidences exchanged in the mediation, not to protect attorneys from the malpractice claims of their own clients. Thus, the majority concluded, when a mediation disputant sues his own counsel for malpractice in connection with the mediation, the attorneys—already freed, by reason of the malpractice suit, from the attorney-client privilege—cannot use mediation confidentiality as a shield to exclude damaging evidence of their own entirely private conversations with the client. The dissenting justice urged that the majority had crafted an unwarranted judicial exception to the clear and absolute provisions of the mediation confidentiality statutes.

Though we understand the policy concerns advanced by the Court of Appeal majority, the plain language of the statutes compels us to agree with

the dissent. As we will explain, the result reached by the majority below contravenes the Legislature's explicit command that, unless the confidentiality of a particular communication is expressly waived, under statutory procedures, by all mediation "participants," or at least by all those "participants" by or for whom it was prepared (§ 1122, subd. (a)(1), (2)), things said or written "for the purpose of" and "pursuant to" a mediation shall be inadmissible in "any . . . civil action." (§ 1119, subds. (a), (b).) As the statutes make clear, confidentiality, unless so waived, extends beyond utterances or writings "in the course of" a mediation (*ibid.*), and thus is not confined to communications that occur *between mediation disputants* during the mediation proceeding itself.

We must apply the plain terms of the mediation confidentiality statutes to the facts of this case unless such a result would violate due process, or would lead to absurd results that clearly undermine the statutory purpose. No situation that extreme arises here. Hence, the statutes' terms must govern, even though they may compromise petitioner's ability to prove his claim of legal malpractice. (See *Foxgate, supra*, 26 Cal.4th 1, 17; *Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 163 [61 Cal.Rptr.3d 200] (*Wimsatt*).) Accordingly, we will reverse the judgment of the Court of Appeal.

## FACTS AND PROCEDURAL BACKGROUND

On February 3, 2005, petitioner filed a complaint against defendants and real parties in interest Wasserman, Comden, Casselman & Pearson, L.L.P., a law firm (WCCP), and certain of its members, including attorneys Steve Wasserman and David Casselman (hereafter collectively real parties). (*Cassel v. Wasserman, Comden, Casselman & Pearson, L.L.P.* (Super. Ct. L.A. County, No. LC070478).) The complaint alleged that real parties, petitioner's retained attorneys, had breached their professional, fiduciary, and contractual duties while representing petitioner in a third party dispute over rights to the Von Dutch clothing label.

The complaint asserted the following: In 1996, petitioner acquired a "global master license" (GML) to use the Von Dutch label, and he founded a company, Von Dutch Originals, L.L.C. (VDO), to sell clothing under that name. In 2002, WCCP began representing petitioner in a dispute over ownership of VDO. Petitioner lost an arbitration resolving that dispute, but the rights to the GML were not determined. Thereafter, petitioner did business in accordance with WCCP's advice that the GML still entitled him to market clothing under the Von Dutch label. These activities caused VDO to sue petitioner for trademark infringement (the VDO suit). WCCP did not inform petitioner that, in connection with the VDO suit, VDO sought a

preliminary injunction against his use of the Von Dutch label. When WCCP failed to oppose the injunction request, it was granted.

The complaint continued: Repeatedly assured by WCCP that the VDO injunction applied only within the United States, petitioner struck a deal to market Von Dutch clothing in Asia. Around the same time, Steve Wasserman, a silent partner in his son's online sales business, persuaded petitioner to provide genuine Von Dutch hats for sale through the son's business. Petitioner later learned this business was also selling counterfeit Von Dutch goods. Citing both the Asian agreement and the online sales as violations of the VDO injunction, VDO sought a finding of contempt against petitioner. In discovery relating to the VDO suit and the contempt motion, VDO deposed Steve Wasserman about the online sales of counterfeit Von Dutch merchandise. Wasserman thus assumed the conflicting roles of counsel and witness in the same case.

Further, the complaint asserted: A pretrial mediation of the VDO suit began at 10:00 a.m. on August 4, 2004. Petitioner attended the mediation, accompanied by his assistant, Michael Paradise, and by WCCP lawyers Steve Wasserman, David Casselman, and Thomas Speiss. Petitioner and his attorneys had previously agreed he would take no less than $2 million to resolve the VDO suit by assigning his GML rights to VDO. However, after hours of mediation negotiations, petitioner was finally told VDO would pay no more than $1.25 million. Though he felt increasingly tired, hungry, and ill, his attorneys insisted he remain until the mediation was concluded, and they pressed him to accept the offer, telling him he was "greedy" to insist on more. At one point, petitioner left to eat, rest, and consult with his family, but Speiss called and told petitioner he had to come back. Upon his return, his lawyers continued to harass and coerce him to accept a $1.25 million settlement. They threatened to abandon him at the imminently pending trial, misrepresented certain significant terms of the proposed settlement, and falsely assured him they could and would negotiate a side deal that would recoup deficits in the VDO settlement itself. They also falsely said they would waive or discount a large portion of his $188,000 legal bill if he accepted VDO's offer. They even insisted on accompanying him to the bathroom, where they continued to "hammer" him to settle. Finally, at midnight, after 14 hours of mediation, when he was exhausted and unable to think clearly, the attorneys presented a written draft settlement agreement and evaded his questions about its complicated terms. Seeing no way to find new counsel before trial, and believing he had no other choice, he signed the agreement.

In his May 2007 deposition, petitioner testified about meetings with his attorneys immediately preceding the mediation, at which mediation strategy

was discussed, and about conversations with his lawyers, outside the presence of the other mediation participants, during the mediation session itself. Petitioner's deposition testimony was consistent with the complaint's claims that his attorneys employed various tactics to keep him at the mediation and to pressure him to accept VDO's proffered settlement for an amount he and the attorneys had previously agreed was too low.

Thereafter, real parties moved in limine under the mediation confidentiality statutes to exclude all evidence of communications between petitioner and his attorneys that were related to the mediation, including matters discussed at the premediation meetings and the private communications among petitioner, Paradise, and the WCCP lawyers while the mediation was underway. A hearing on the motion took place on April 1 and 2, 2009. The trial court examined petitioner's deposition in detail and heard further testimony from David Casselman.

At length, the court ruled that, in addition to information about the conduct of the mediation session itself, the following evidence was protected by the mediation confidentiality statutes and would not be admissible: (1) discussions between petitioner and WCCP attorneys on April 2, 2004, concerning plans and preparations for the mediation, mediation strategy, and amounts petitioner might be offered, and would accept, in settlement at the mediation; (2) similar discussions between petitioner and WCCP attorneys on April 3, 2004; (3) all private communications among petitioner, Paradise, and WCCP attorneys on April 4, 2004, during the mediation, concerning (a) the progress of the session, (b) settlement offers made, (c) petitioner's departure from the mediation over the objection of WCCP attorneys and their efforts to secure his return, (d) recommendations by WCCP lawyers that petitioner accept VDO's $1.25 million offer, (e) their accusations that he was "greedy" for considering $5 million as an appropriate amount, (f) who would try the case if petitioner did not settle the VDO suit, (g) a possible deal, if petitioner settled, to acquire an interest in VDO for him through the pending divorce of VDO's owner, and (h) WCCP's willingness to reduce its fees if petitioner settled the suit. The court also ruled inadmissible, as communicative conduct, the act of a WCCP attorney in accompanying petitioner to the bathroom during the mediation.

Petitioner sought mandate. The Court of Appeal issued an order to show cause why the trial court's order should not be vacated. After real parties filed a return to the petition, and petitioner filed a reply, the Court of Appeal granted mandamus relief.

The majority reasoned as follows: The mediation confidentiality statutes do not extend to communications between a mediation participant and his or her

own attorneys outside the presence of other participants in the mediation. The purpose of mediation confidentiality is to allow the *disputing parties in a mediation* to engage in candid discussions *with each other* about their respective positions, and the strengths and weaknesses of their respective cases, without fear that the matters thereby disclosed will later be used *against them*. This protection was not intended to prevent a client from proving, through private communications outside the presence of all other mediation participants, a case of legal malpractice against the client's own lawyers. Moreover, a mediation disputant and the disputant's attorneys are a single mediation "participant" for purposes of the mediation confidentiality statutes. Thus, an attorney cannot block the client's disclosure of private attorney-client communications by refusing, as a separate "participant," to waive any mediation confidentiality that might otherwise apply. (See § 1122, subd. (a)(2).) Were this not so, the mediation confidentiality statutes would unfairly hamper a malpractice action by overriding the waiver of the attorney-client privilege that occurs by operation of law when a client sues lawyers for malpractice. (See § 958.)

In dissent, Presiding Justice Perluss argued that the majority had crafted a forbidden judicial exception to the clear requirements of mediation confidentiality. The dissent reasoned as follows: By their plain terms, subdivisions (a) and (b) of section 1119 do not simply protect oral or written communications "in the course of" mediation—i.e., those made to the mediator, to other mediation disputants, or to persons participating in the mediation on behalf of such other disputants. Instead, the statutes also include within their protection communications made "for the purpose of" mediation. Thus, even unilateral mediation-related discussions between a disputant and the disputant's own attorneys are confidential. Moreover, unless all mediation participants waive confidentiality, the protection applies even if the communications do not reveal anything about the content of the mediation proceedings themselves. The latter conclusion flows from section 1122, subdivision (a)(2), which allows fewer than all participants in the mediation to waive, by an express writing or recorded oral statement, the confidentiality of an oral or written communication prepared solely for their benefit, but only if the communication "does not disclose anything said or done . . . in the course of the mediation." Applying the mediation confidentiality statutes in accordance with their plain meaning to protect private mediation-related discussions between a mediation disputant and the disputant's attorneys may indeed hinder the client's ability to prove a legal malpractice claim against the lawyers. However, it is for the Legislature, not the courts, to balance the competing policy concerns.'

We granted review.

## DISCUSSION[2]

As below, real parties urge that under the plain language of the mediation confidentiality statutes, their mediation-related discussions with petitioner are inadmissible in his malpractice action against them, even if those discussions occurred in private, away from any other mediation participant. Petitioner counters that the mediation confidentiality statutes do not protect such private attorney-client communications—even if they occurred in connection with a mediation—against the client's claims that the attorneys committed legal malpractice. As we will explain, we agree with real parties.[3]

Pursuant to recommendations of the California Law Revision Commission, the Legislature adopted the current version of the mediation confidentiality statutes in 1997. (*Simmons, supra*, 44 Cal.4th 570, 578.) The statutory purpose is to encourage the use of mediation by promoting " ' "a candid and informal exchange regarding events in the past . . . . This frank exchange is achieved only if the participants know that what is said in the mediation will not be used to their detriment through later court proceedings and other adjudicatory processes." [Citations.]' (*Foxgate*[, *supra*,] 26 Cal.4th 1, 14 . . . .)" (*Simmons, supra*, at p. 578.)

■ Section 1119 governs the general admissibility of oral and written communications generated during the mediation process. Subdivision (a) provides in pertinent part that "[n]o evidence of anything said or any admission made *for the purpose of, in the course of, or pursuant to*, a mediation . . . is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any . . . civil action . . . ." (Italics added.) Subdivision (b) similarly bars discovery or admission in evidence of any "writing . . . prepared for the purpose of, in the course of, or pursuant to, a mediation . . . ." Subdivision (c) of section 1119 further provides that "[a]ll communications, negotiations, or settlement discussions *by and between* participants in the course of a mediation . . . shall remain confidential."

---

[2] John and Deborah Blair Porter have submitted an amicus curiae brief on behalf of petitioner. The Association of Southern California Defense Counsel has submitted an amicus curiae brief on behalf of real parties.

[3] As the Court of Appeal majority declared, "The question presented is whether, *as a matter of law*, mediation confidentiality requires exclusion of conversations and conduct solely between a client, [petitioner], and his attorneys, [WCCP], on August 2, 3, and 4, 2004[,] during meetings in which they were the sole participants and which were held outside the presence of any opposing party or [the] mediator." (Italics added.) Thus, we need not, and do not, review the trial court's factual determinations that the communications it excluded from discovery and evidence were *mediation related*, and thus within the purview of the mediation confidentiality statutes. As the Court of Appeal dissent pointed out, petitioner "does not argue . . . that the trial court abused its discretion in concluding, after carefully reviewing each of the statements at issue here, that they were materially related to the mediation . . . , and that issue is not properly before us." We frame our discussion accordingly.

(Italics added.) Exceptions are made for oral or written settlement agreements reached in mediation if the statutory requirements for disclosure are met. (§§ 1118, 1123, 1124; see *Simmons, supra*, 44 Cal.4th 570, 579.)

■ Under section 1122, "participants" in the mediation may, by the means set forth in the statute, waive, at least in part, the confidentiality of otherwise protected mediation-related communications. Subdivision (a)(1) of section 1122 provides that *all* "who . . . participate" in a mediation may "expressly agree in writing," or orally if statutory requirements are met, "to disclosure of [a] communication, document, or writing." Subdivision (a)(2) provides that if a "communication, document, or writing was prepared by or on behalf of fewer than all of the mediation participants, *those participants* [may] expressly agree in writing," or orally if statutory requirements are met, to disclosure of the communication, document, or writing, so long as "the communication, document, or writing does not disclose anything said or done . . . in the course of the mediation." (Italics added.)

■ As noted above, the purpose of these provisions is to encourage the mediation of disputes by eliminating a concern that things said or written in connection with such a proceeding will later be used against a participant. "Toward that end, 'the statutory scheme . . . unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception.' " (*Fair, supra, .*40 Cal.4th 189, 194, quoting *Foxgate, supra*, 26 Cal.4th 1, 15.) Judicial construction, and judicially crafted exceptions, are permitted only where due process is implicated, or where literal construction would produce absurd results, thus clearly violating the Legislature's presumed intent. Otherwise, the mediation confidentiality statutes must be applied in strict accordance with their plain terms. Where competing policy concerns are present, it is for the Legislature to resolve them. (*Simmons, supra*, 44 Cal.4th at pp. 582–583; *Foxgate, supra*, at pp. 14–17.)

Thus, in *Foxgate*, we concluded that under the confidentiality provisions of section 1119, and under section 1121, which strictly limits the content of mediators' reports,[4] a mediator may not submit to the court, and the court may not consider, a report of communications or conduct by a party which the mediator believes constituted a failure to comply with an order of the mediator and to participate in good faith in the mediation process. As we noted, the pertinent statutes are clear and unambiguous, thus precluding

---

[4] Section 1121 provides: "Neither a mediator nor anyone else may submit to a court or other adjudicative body, and a court or other adjudicative body may not consider, any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, other than a report that is mandated by court rule or other law and that states only whether an agreement was reached, unless all parties to the mediation expressly agree otherwise in writing, or orally in accordance with [s]ection 1118."

judicially crafted exceptions. Even if the failure to allow such a report means there is no sanction for a party's refusal to cooperate during a mediation, we observed, "the Legislature has weighed and balanced the policy that promotes effective mediation by requiring confidentiality against a policy that might better encourage good faith participation in the [mediation] process." (*Foxgate, supra,* 26 Cal.4th 1, 17.)

Moreover, we pointed out, there was no justification to ignore the plain statutory language, because a literal interpretation neither undermined clear legislative policy nor produced absurd results. As we explained, the Legislature had decided that the candor necessary to successful mediation is promoted by shielding mediation participants from the threat that their frank expression of views during a mediation might subject them to sanctions based on the claims of another party, or the mediator, that they were acting in bad faith. (*Foxgate, supra,* 26 Cal.4th 1, 17.)

In *Rojas,* we confirmed that under the plain language of the mediation confidentiality statutes, all "writings" " 'prepared for the purpose of, in the course of, or pursuant to, a mediation,' " are confidential and protected from discovery. (*Rojas, supra,* 33 Cal.4th 407, 416, quoting § 1119, subd. (b).) We explained that the broad definition of "writings" set forth in section 250, and incorporated by express reference into section 1119, subdivision (b), encompasses such materials as charts, diagrams, information compilations, expert reports, photographs of physical conditions, recordings or transcriptions of witness statements, and written or recorded analyses of physical evidence. (*Rojas,* at p. 416.) We agreed that direct physical evidence itself is not protected, even if presented in a mediation, because such evidence is not a "writing." (§§ 250, 1119, subd. (b).) We also acknowledged that a "writing" is not protected "solely by reason of its introduction or use in a mediation." (§ 1120, subd. (a).) However, we stressed that any "writing" is so shielded if that "writing" was prepared in connection with a mediation. (*Rojas, supra,* at p. 417.)

*Rojas* further made clear that the nondiscoverability of writings prepared for mediation, unlike the shield otherwise provided for certain attorney work product, is not subject to a "good cause" exception, based on "prejudice" or "injustice" to the party seeking discovery. (Code Civ. Proc., former § 2018, subd. (b); see now *id.,* § 2018.030, subd. (b) [attorney work product, other than writings reflecting "attorney's impressions, conclusions, opinions, or legal research or theories" (*id.,* subd. (a)), is discoverable if court finds "that denial of discovery will unfairly prejudice the party seeking discovery . . . or

will result in an injustice"].) The mediation confidentiality statutes, we pointed out, include no similar "good cause" limitation, and courts are thus not free to balance the importance of mediation confidentiality against a party's need for the materials sought. (*Rojas, supra*, 33 Cal.4th 407, 414, 423–424.)

In *Fair*, we construed subdivision (b) of section 1123, which permits disclosure of a written settlement agreement reached in mediation *if*, among other things, " '[t]he agreement provides that it is enforceable or binding *or words to that effect.*' " (*Fair, supra*, 40 Cal.4th at p. 196, italics added.) "In order to preserve the confidentiality required to protect the mediation process and provide clear drafting guidelines," we held that, to satisfy section 1123, subdivision (b), the written agreement "must *directly express* the parties' agreement to be bound by the document they sign." (*Fair, supra*, 40 Cal.4th 189, 197, italics added.) Thus, the writing must include, on its face, "*a statement* that it is 'enforceable' or 'binding,' or a declaration in other terms with the same meaning." (*Id.*, at pp. 199–200, italics added.) The mere inclusion of "*terms* unambiguously signifying the parties' intent to be bound" (*id.*, at p. 197, italics added) will not suffice (*id.*, at p. 200).

We further determined in *Fair* that a written settlement reached in mediation cannot be made admissible by virtue of extrinsic evidence of a party's intent to be bound, such as a representation in court by that party's attorney that a final, enforceable agreement was reached in mediation. As we explained, section 1123, subdivision (b) "is designed to produce documents that clearly reflect the parties' agreement that the settlement terms are 'enforceable or binding.' " (*Fair, supra*, 40 Cal.4th 189, 198.)

In reaching these conclusions, we noted that a tentative working document produced in mediation may include terms, such as an arbitration provision, "without reflecting an actual agreement to be bound. If such a typical settlement provision were to trigger admissibility, parties might inadvertently give up the protection of mediation confidentiality during their negotiations over the terms of settlement." (*Fair, supra*, 40 Cal.4th 189, 198.) Durable settlements, we explained, are more likely to result "if [section 1123, subdivision (b)] is applied to require language directly reflecting the parties' awareness that they are executing an 'enforceable or binding' agreement." (*Fair, supra*, 40 Cal.4th at p. 198.)

Most recently, in *Simmons*, we held that the judicial doctrines of equitable estoppel and implied waiver are not valid exceptions to the strict technical requirements set forth in the mediation confidentiality statutes for the disclosure and admissibility of oral settlement agreements reached in mediation. (§§ 1118, 1122, subd. (a), 1124.) Thus, we determined, when the plaintiffs

sued to enforce an oral mediation agreement the defendant had refused to sign,[5] the plaintiffs could not claim the defendant's pretrial disclosure of the agreement for litigation purposes estopped her from invoking the mediation confidentiality statutes, or constituted a waiver of their requirements.[6]

■ We affirmed once again in *Simmons* that the Legislature intended the unambiguous provisions of the mediation confidentiality statutes to be applied broadly (*Simmons, supra,* 44 Cal.4th 570, 580), that exceptions are limited to narrowly prescribed statutory exemptions, and that "[e]xcept in cases of express waiver or where due process is implicated" (*id.,* at p. 582; see *Foxgate, supra,* 26 Cal.4th 1, 15–17; *Rinaker v. Superior Court* (1998) 62 Cal.App.4th 155, 167 [74 Cal.Rptr.2d 464] (*Rinaker*) [mediator required to testify where juvenile's due process right to confront witnesses outweighed mediation confidentiality]; *Olam v. Congress Mortgage Co.* (N.D.Cal. 1999) 68 F.Supp.2d 1110, 1118–1119, 1129 [parties expressly waived confidentiality]), mediation confidentiality must be strictly enforced, even where competing policy considerations are present.

We determined that *Simmons,* "[l]ike *Foxgate* and *Rojas,* . . . [did] not implicate any due process right equivalent to the right bestowed by the confrontation clause of the United States Constitution, nor ha[d] the parties executed express waivers of confidentiality." (*Simmons, supra,* 44 Cal.4th at p. 583.) Accordingly, we concluded that litigation conduct by the defendant, not meeting the technical requirements for the disclosure of an agreement

---

[5] Except where confidentiality has been waived (§ 1124, subd. (b); see fn. 6, *post*), or where disclosure is necessary to show fraud, illegality or duress (§ 1124, subd. (c)), an oral agreement reached in mediation is inadmissible and protected from disclosure (§ 1119, subds. (a), (b)) unless all of the following requirements are satisfied: (1) the oral agreement is transcribed by a court reporter, or recorded by a reliable means of sound recording (§ 1118, subd. (a)), (2) the agreement's terms are recited on the record, in the presence of all parties and the mediator, and the parties state on the record they agree to the terms recited (*id.,* subd. (b)), (3) the parties to the agreement "expressly state on the record that the agreement is enforceable or binding, or words to that effect" (*id.,* subd. (c)), and (4) the transcription or recording is reduced to writing and signed by the parties within 72 hours after it is recorded (*id.,* subd. (d)). (See § 1124.)

[6] As noted above, a communication or writing "made or prepared for the purpose of, or in the course of, or pursuant to" a mediation may be disclosed or admitted in evidence if (1) all participants in the mediation expressly so agree in writing, or orally as prescribed in section 1118 (§ 1122, subd. (a)(1)), or (2) the communication or writing was prepared "by or on behalf of fewer than all the mediation participants," those participants expressly so agree in writing, or orally as prescribed in section 1118, and "the communication . . . or writing does not disclose anything said or done or any admission made in the course of the mediation" (§ 1122, subd. (a)(2)). An oral agreement made "in the course of, or pursuant to, a mediation" is not inadmissible or protected from disclosure if the agreement satisfies the requirements of subdivisions (a), (b), and (d) of section 1118 (see fn. 5, *ante*), "and all parties to the agreement expressly agree, in writing or orally in accordance with Section 1118, to disclosure of the agreement." (§ 1124, subd. (b).)

reached in mediation, neither estopped her from invoking mediation confidentiality nor constituted an implied waiver of such confidentiality. (*Id.*, at pp. 582–588; accord, *Eisendrath v. Superior Court* (2003) 109 Cal.App.4th 351, 360–365 [134 Cal.Rptr.2d 716] (*Eisendrath*) [no implied waiver by conduct].)

■ Here, as in *Foxgate, Rojas, Fair,* and *Simmons,* the plain language of the mediation confidentiality statutes controls our result. Section 1119, subdivision (a) clearly provides that "[n]o evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation . . . is admissible or subject to discovery . . . ." As we noted in *Simmons,* section 1119, adopted in 1997, "is more expansive than its predecessor, former section 1152.5. Section 1119, subdivision (a), extends to oral communications made *for the purpose of* or *pursuant to* a mediation, not just to oral communications made *in the course of* the mediation. [Citation.]" (*Simmons, supra,* 44 Cal.4th 570, 581, italics added, citing Cal. Law Revision Com. com., reprinted at 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1119, p. 391.)

The obvious purpose of the expanded language is to ensure that the statutory protection extends beyond discussions carried out directly between the opposing parties to the dispute, or with the mediator, during the mediation proceedings themselves. All oral or written communications are covered, if they are made "for the purpose of" or "pursuant to" a mediation. (§ 1119, subds. (a), (b).) It follows that, absent an express statutory exception, all discussions conducted in preparation for a mediation, as well as all mediation-related communications that take place during the mediation itself, are protected from disclosure. Plainly, such communications include those between a mediation disputant and his or her own counsel, even if these do not occur in the presence of the mediator or other disputants.[7]

---

[7] At oral argument, petitioner's counsel stressed that section 1119, subdivision (a) prohibits the discovery or admission in evidence "of anything said *or any admission made* for the purpose of, in the course of, or pursuant to, a mediation . . . ." (Italics added.) Counsel seemed to suggest the italicized phrase "or any admission made" effectively narrows the plain meaning of "anything said" by limiting protection to mediation-related oral communications that are in the nature of damaging admissions. We find no evidence to support this construction. Similar disjunctive language has existed in the statute since the 1985 adoption of section 1119, subdivision (a)'s predecessor, former section 1152.5, subdivision (a) (Stats. 1985, ch. 731, p. 2379), and appeared in the original version of the 1985 bill (see Assem. Bill No. 1030 (1985–1986 Reg. Sess.) as introduced Feb. 27, 1985, p. 1 (Assembly Bill No. 1030)). Portions of the legislative history of Assembly Bill No. 1030 declare that the protective purpose extends, interchangeably, to "disclosures," "information," and "communications." (Recommendation relating to Protection of Mediation Communications, 11 Cal. Law Revision Com. Rep. (1985) pp. 241, 247–248; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1030 as amended Apr. 8, 1985, pp. 1, 2; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1030, as amended July 1, 1985, pp. 1–3.) However, petitioner cites no document from this history, and

This conclusion is reinforced by examination of section 1122, subdivision (a)(2), which sets forth the circumstances under which fewer than all of the participants in a mediation may stipulate to the disclosure of otherwise confidential mediation-related communications. Under this statute, those mediation participants "by or on [whose] behalf" a mediation-related communication, document, or writing was prepared may agree, under specified statutory procedures, to its disclosure, but only insofar as the communication in question "does not [reveal] *anything said or done . . . in the course of* the mediation." (Italics added.) Section 1122, subdivision (a)(2) thus presupposes there are mediation-related communications that (1) are prepared "by or on behalf of fewer than all the mediation participants," and (2) do not "disclose anything said or done . . . in the course of the mediation," but (3) are nonetheless protected by mediation confidentiality unless the affected participants otherwise agree. (*Ibid.*) Logically, these must include communications that are made or prepared outside a mediation, but are "for the purpose of" or "pursuant to" the mediation. (§ 1119, subds. (a), (b).) Such mediation-related communications plainly encompass those between a mediation disputant and the disputant's counsel, even though these occur away from other mediation participants and reveal nothing about the mediation proceedings themselves.

Agreeing with petitioner's contrary contention, the Court of Appeal majority noted that mediation is defined as "a process in which a neutral person or persons facilitate communication *between the disputants* to assist them in reaching a mutually acceptable agreement." (§ 1115, subd. (a), italics added.) The majority thus reasoned that the "[l]egislative intent and policy behind mediation confidentiality are to facilitate communication by a *party* that otherwise the *party* would not provide, given the potential for another *party* to the mediation to use the information against the *revealing party*; they are not to facilitate communication between a party and his own attorney." (Italics added.) Focusing on our statement in *Foxgate* that the frank exchange essential to a successful mediation " 'is achieved only if the *participants* know that what is said in the mediation will not be used to their detriment through later court proceedings and other adjudicatory processes' " (*Foxgate,*

we have found none, that indicates the phrase "or any admission made" was intended, in particular, to limit the plain meaning of "anything said." Nor does the history of the 1997 legislation that was enacted as the current statutes suggest any such significance. On the contrary, as previously noted, the California Law Revision Commission comment to section 1119, subdivision (a) emphasizes that this provision was intended to *broaden* the protection for mediation-related discussions by extending it beyond utterances "in the course" of a mediation to include "*oral communications* made *for the purpose of* or *pursuant to* a mediation." (Cal. Law Revision Com. com., 29B pt. 3B West's Ann. Evid. Code, *supra*, foll. § 1119, p. 391, italics added.) In this context, the phrase "anything said or any admission made" seems intended, at most, to indicate that the protection applies *not only* to damaging admissions conveyed by *any* means in the context of a mediation, but also, in an abundance of caution, to *all other things* "*said . . .* for the purpose of, in the course of, or pursuant to, a mediation . . . ." (§ 1119, subd. (a), italics added.)

*supra*, 26 Cal.4th 1, 14, italics added), the majority concluded that a party to mediation, and the party's attorney, are a single mediation "participant" whose communications *inter se* are not within the intended purview of the mediation confidentiality statutes.

■ But there is no persuasive basis to equate mediation "parties" or "disputants" with mediation "participants," and thus to restrict confidentiality to potentially damaging mediation-related exchanges *between disputing parties*. In the first place, section 1119, subdivisions (a) and (b), do not restrict confidentiality to communications between mediation "participants." They provide more broadly that "[n]o evidence of *anything said*" (§ 1119, subd. (a), italics added), and "[n]o writing" (*id.*, subd. (b)), is discoverable or admissible in a legal proceeding if the utterance or writing was "for the purpose of, in the course of, or pursuant to, a mediation . . . ." (*Id.*, subds. (a), (b).) The protection afforded by these statutes is not limited by the identity of the communicator, by his or her status as a "party," "disputant," or "participant" in the mediation itself, by the communication's nature, or by its specific potential for damage to a disputing party.

■ Second, the Court of Appeal majority's assumption that the mediation "disputants" are the only "participants" in the mediation, and that a disputant and his or her counsel are thus a single "participant," does not bear scrutiny. "Participants" are not defined in the statutory text, but they are mentioned at several points in the statutory scheme, under circumstances making clear that the term "participants" includes more than the mediation parties or disputants.

Thus, section 1119, subdivision (c) provides that "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation . . . shall remain confidential." The California Law Revision Commission comment following section 1119 states, as to subdivision (c), that "[a] mediation is confidential notwithstanding the presence of an observer, such as a person evaluating or training the mediator or studying the mediation process." (Cal. Law Revision Com. com., 29B pt. 3B West's Ann. Evid. Code, *supra*, foll. § 1119, p. 391.) The implication is that such an observer is to be considered a "participant" in the mediation, who is obliged to maintain the confidentiality of communications in the course of a mediation.

An even clearer indication of the correct concept of "participants" arises in connection with section 1122. As noted above, section 1122, subdivision (a) states the conditions under which agreement can be reached for the disclosure and admission in evidence of otherwise confidential materials. Subdivision (a)(1) states that mediation-related communications and writings are not made inadmissible, or protected from disclosure, if "[a]ll persons who conduct or

otherwise participate in the mediation" expressly agree to such disclosure by the prescribed statutory means. Subdivision (a)(2) provides that a communication or writing prepared "by or on behalf of fewer than all the mediation participants" is not protected from disclosure, or made inadmissible, if "those participants" agree to permit disclosure, and the communication or writing "does not disclose anything said or done . . . in the course of the mediation."

The California Law Revision Commission comment following section 1122 states, in its analysis of subdivision (a)(1), that "mediation documents and communications may be admitted or disclosed only upon agreement of *all participants, including not only parties* but also the mediator and *other nonparties attending the mediation* (e.g., a disputant not involved in litigation, a spouse, an accountant, an insurance representative, or an employee of a corporate affiliate)." (Cal. Law Revision Com. com., 29B pt. 3B West's Ann. Evid. Code, *supra*, foll. § 1122, p. 409, italics added.) The list provided by the commission is, by its terms, not all-inclusive (note the "e.g." preceding the examples given), and no reason appears why other persons attending and assisting in the mediation on behalf of the disputants, such as their counsel, are not themselves distinct "participants" who must agree to the disclosure of confidential mediation-related communications they made or received.[8] Though petitioner urges us to do so, we therefore decline to accept the Court of Appeal's "single participant" characterization, which contradicts the plain import of the statutes.[9]

The Court of Appeal majority also implied that the mediation confidentiality statutes, in their role as protectors of frank exchanges between the *parties*

---

[8] As real parties observe, Judicial Council rules governing minimum standards of conduct for civil mediators define a " '[p]articipant' " in mediation as "any individual, entity, or group, other than the mediator taking part in a mediation, *including but not limited to attorneys for the parties*." (Cal. Rules of Court, rule 3.852(3), italics added.) The rules further provide that prior to the first mediation session, the mediator must provide the participants with a general explanation of mediation confidentiality. (*Id.*, rule 3.854(c).) Under the rules, the mediator is further required to give all participants advance warning if he or she intends to speak with one or more participants outside the other participants' presence, and is prohibited from disclosing information revealed in confidence "unless authorized to do so by the participant or participants who revealed the information." (*Ibid.*) We do not rely directly on the definition of "participant" in the Judicial Council rules, however, because the definitions therein provided "are applicable only to these rules of conduct and do not limit or expand mediation confidentiality under the Evidence Code or other law." (Advisory Com. com., 23 pt. 1A West's Ann. Codes, Rules (2006 ed.) foll. rule 3.852, p. 424.)

[9] Petitioner urges that even if the attorneys who represent a mediation disputant are themselves "participants" in the mediation, they should not be deemed *separate* "participants" who may thus unilaterally block the discovery and admission in evidence of mediation-related attorney-client communications pertinent to the client's suit against them for legal malpractice. But we see no basis to reach this construction of the statutory language. Section 1122, subdivision (a)(2) clearly requires that when a communication was prepared "*by or on behalf of* fewer than all . . . participants, *those participants*" must expressly agree to disclosure of the

to a mediation, were not intended to trump section 958, which eliminates the confidentiality protections otherwise afforded by the *attorney-client privilege* (§ 950 et seq.) in suits between clients and their own lawyers. But the mediation confidentiality statutes include no exception for legal malpractice actions by mediation disputants against their own counsel. Moreover, though both statutory schemes involve the shielding of confidential communications, they serve separate and unrelated purposes.

A legal client's personal statutory privilege of confidentiality (§§ 953, 954), applicable to all communications between client and counsel (§ 952), allows the client to consult frankly with counsel on any matter, without fear that others may later discover and introduce against the client confidences exchanged in the attorney-client relationship. The exception to the privilege set forth in section 958 simply acknowledges that, in litigation between lawyer and client, the client should not be able to use the privilege to bar otherwise relevant and admissible evidence which supports the lawyer's claim, or undermines the client's.

■ By contrast, the mediation confidentiality statutes do not create a "privilege" in favor of any particular person. (See, e.g., *Wimsatt, supra,* 152 Cal.App.4th 137, 150, fn. 4; *Eisendrath, supra,* 109 Cal.App.4th 351, 362–363; but see, e.g., *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1572, fn. 5 [36 Cal.Rptr.3d 901] [referring to a "mediation privilege"].) Instead, they serve the public policy of encouraging the resolution of disputes by means short of litigation. The mediation confidentiality statutes govern only the narrow category of mediation-related communications, but they apply broadly within that category, and are designed to provide maximum protection for the privacy of communications in the mediation context. A principal purpose is to assure prospective participants that their interests will not be damaged, first, by attempting this alternative

communication. (Italics added.) Any mediation-related communications from WCCP attorneys to petitioner were prepared "by" those "participant" lawyers, who, under the statutory language, must therefore consent by statutory procedures to the disclosure of such communications.

Indeed, other provisions of the statute undermine petitioner's contention that a mediation disputant's participating lawyers are bound, as the disputant's agents, by the disputant's unilateral decision to waive confidentiality. Section 1115, subdivision (b) defines a "mediator" to include not only the neutral person who conducts a mediation, but also "any person designated by [the] mediator either to assist in the mediation or to communicate with the participants in preparation for [the] mediation." In turn, section 1122, subdivision (b) provides that whenever a mediator expressly agrees to disclosure of an otherwise confidential communication, that agreement also binds the persons described in section 1115, subdivision (b). Insofar as the statutory scheme *expressly* defines *one* mediation participant (the mediator) to include his or her assisting agents, and *explicitly* binds those agents to the mediator's disclosure decision, we may assume the statute does not *implicitly* extend similar treatment to the relationship between another mediation participant (a disputant) and the disputant's participating counsel.

means of resolution, and then, once mediation is chosen, by making and communicating the candid disclosures and assessments that are most likely to produce a fair and reasonable mediation settlement. To assure this maximum privacy protection, the Legislature has specified that all mediation participants involved in a mediation-related communication must agree to its disclosure.

Neither the language nor the purpose of the mediation confidentiality statutes supports a conclusion that they are subject to an exception, similar to that provided for the attorney-client privilege, for lawsuits between attorney and client.[10] The instant Court of Appeal's contrary conclusion is nothing more or less than a judicially crafted exception to the unambiguous language of the mediation confidentiality statutes in order to accommodate a competing policy concern—here, protection of a client's right to sue his or her attorney. We and the Courts of Appeal have consistently disallowed such exceptions, even where the equities appeared to favor them.

Of particular interest in this regard is the Court of Appeal's decision in *Wimsatt*. There, the court held that mediation briefs and attorney e-mails written and sent in connection with the mediation were protected from disclosure by the mediation confidentiality statutes, even when one of the mediation disputants sought these materials in support of his legal malpractice action against his own attorneys. Confirming that there is no "attorney malpractice" exception to mediation confidentiality, the *Wimsatt* court explained: "Our Supreme Court has clearly and [unequivocally] stated that we may not craft exceptions to mediation confidentiality. [Citation.] The Court has also stated that if an exception is to be made for legal misconduct, it is for the Legislature to do, and not the courts. [Citation.]" (*Wimsatt, supra,* 152 Cal.App.4th 137, 163.) As the court in *Wimsatt* acknowledged, "[t]he stringent result we reach here means that when clients, such as [the malpractice plaintiff in that case], participate in mediation they are, in effect, relinquishing all claims for new and independent torts arising from mediation, including legal malpractice causes of action against their own counsel." (*Ibid.*)

█ The instant Court of Appeal majority reasoned that *Wimsatt*'s facts were distinguishable, because there, communications between counsel for the

---

[10] Petitioner urges that if mediation confidentiality applies to private conversations between lawyer and client, insofar as they relate to a mediation, the attorneys get the best of both worlds when sued by a client for malpractice in connection with the mediation—i.e., the suit waives the attorney-client privilege, allowing the lawyers to present confidential communications favorable to them, but the mediation confidentiality statutes prevent the client from presenting evidence of such private discussions insofar as they are damaging to the attorneys. Petitioner overlooks that the mediation confidentiality statutes work *both ways*; they prevent *either* party to the malpractice suit from disclosing the content of their private mediation-related communications unless (1) the other agrees by the statutory means, and (2) the disclosure reveals nothing said or done in the mediation proceedings themselves.

disputants were at issue, whereas here, the communications sought occurred only between petitioner and his own counsel. However, as we have explained, the language of the mediation confidentiality statutes extends beyond the narrow circumstances at issue in *Wimsatt*; it plainly includes every oral or written communication by any person that occurs "for the purpose of, in the course of, or pursuant to, a mediation." (§ 1119, subds. (a), (b).) As *Wimsatt* correctly determined, that broad rule does not become inapplicable in cases where a client seeks disclosure of the confidential communication as evidence in a legal malpractice action against his or her attorneys.

A United States District Court case, *Benesch v. Green* (N.D.Cal., Dec. 17, 2009, No. C-07-03784 EDL) 2009 WL 4885215 (*Benesch*), more recent than the Court of Appeal decision in this case, supports our analysis even more closely than does *Wimsatt*. In *Benesch*, a mediation disputant sued her attorney, claiming counsel committed malpractice by inducing her, in the mediation, to sign an enforceable "Term Sheet" that failed to meet her aim of ensuring her daughter's inheritance rights. Defendant attorney sought summary judgment, asserting that the client had no case without introducing evidence protected by the mediation confidentiality statutes, including "the legal advice that [counsel] gave to [the client], and the circumstances in which the Term Sheet was executed." (*Id.*, at p. *5.)

The district court denied summary judgment, ruling that it was not absolutely clear the mediation confidentiality statutes left the client without evidence sufficient to prove her case. Nonetheless, the court agreed that the multiple California cases construing the mediation confidentiality statutes, including *Wimsatt*, "generally support Defendant's position" that mediation-related communications, including those only between client and counsel, are not subject to disclosure, even when this may inhibit a client's claim that her lawyer committed malpractice. (*Benesch, supra*, 2009 WL 4885215 at p. *5.)

 In particular, *Benesch* criticized the instant Court of Appeal majority's decision as at odds with section 1119, subdivision (a), contrary to the rule against implied exceptions to mediation confidentiality, and "in significant tension with the large majority of California appellate decisions" construing the mediation confidentiality statutes. (*Benesch, supra*, 2009 WL 4885215 at p. *7.) As the district court observed, even if a private attorney-client conversation did not occur "in the course of" a mediation, this circumstance is not enough to exempt the communication from confidentiality, because the statutory "protections also encompass communications made 'for the purpose of' or 'pursuant to' mediation . . . ." (*Ibid.*) The latter phrases, the court explained, "must necessarily include statements that were not made in the course of the mediation itself, or those additional provisions would be superfluous." (*Ibid.*)

As pertinent here, the *Benesch* court declared, "Communications between counsel and client that are materially related to the mediation, even if they are not made to another party or the mediator, are 'for the purpose of' or 'pursuant to' mediation." (*Benesch, supra,* 2009 WL 4885215 at p. *7.) Indeed, the court noted, if protected communications did not include those *outside* the mediation proceedings, it would be unnecessary and useless for section 1122, subdivision (a)(2) to provide that communications by and between fewer than all participants in a mediation may be disclosed if all such participants agree and " 'the communication . . . does not disclose anything said or done . . . in the course of mediation . . . .' " (*Benesch, supra,* at p. *7.)

We agree with this analysis. We further emphasize that application of the mediation confidentiality statutes to legal malpractice actions does not implicate due process concerns so fundamental that they might warrant an exception on constitutional grounds. Implicit in our decisions in *Foxgate, Rojas, Fair,* and *Simmons* is the premise that the mere loss of evidence pertinent to the prosecution of a lawsuit for civil damages does not implicate such a fundamental interest.

The Court of Appeal in *Wimsatt* expressly reached this very conclusion. There, the trial court had found that the mediation briefs and e-mails sought by the legal malpractice plaintiff were subject to disclosure notwithstanding the mediation confidentiality statutes. The court had relied on *Rinaker, supra,* 62 Cal.App.4th 155, which held that, under the circumstances of that case, the statutes governing mediation confidentiality were outweighed by the juveniles' constitutional right to obtain evidence crucial to their defense against allegations of criminal conduct.

However, in *Wimsatt,* the Court of Appeal rejected the analogy to *Rinaker,* explaining that "in *Rinaker* the information sought to be introduced was in delinquency proceedings where the minors were being charged with criminal activity. In *Rinaker,* the information to be elicited (admissions made by the victim) could have exonerated the minors. To deny the minors access to the information would have denied them their constitutionally protected rights. In contrast, the proceedings before us involve a civil legal malpractice action where money damages are sought. The present case is no different from the thousands of civil cases routinely resolved through mediation." (*Wimsatt, supra,* 152 Cal.App.4th 137, 162.)[11]

---

[11] Indeed, by their plain terms, section 1119, subdivisions (a) and (b), protect mediation-related communications from disclosure and admissibility only in "arbitration[s], administrative adjudication[s], *civil* action[s] [and] other *noncriminal* proceeding[s] . . . ." (Italics added.) Thus, we note, these statutes would afford no protection to an attorney who is *criminally prosecuted* for fraud on the basis of mediation-related oral communications.

Furthermore, while we pass no judgment on the wisdom of the mediation confidentiality statutes, we cannot say that applying the plain terms of those statutes to the circumstances of this case produces a result that is either absurd or clearly contrary to legislative intent. The Legislature decided that the encouragement of mediation to resolve disputes requires broad protection for the confidentiality of communications exchanged in relation to that process, even where this protection may sometimes result in the unavailability of valuable civil evidence. To this end, the Legislature could further reasonably conclude that confidentiality should extend to "anything" said or written "for the purpose of, in the course of, or pursuant to" a mediation (§ 1119, subds. (a), (b)), including mediation-related discussions between a mediation disputant and his own counsel, subject only to express waiver by all mediation "participants" involved in the communication (§ 1122), including such attorneys.

Inclusion of private attorney-client discussions in the mediation confidentiality scheme addresses several issues about which the Legislature could rationally be concerned. At the outset, the Legislature might determine, such an inclusion gives maximum assurance that disclosure of an ancillary mediation-related communication will not, perhaps inadvertently, breach the confidentiality of the mediation proceedings themselves, to the damage of one of the mediation disputants.

Moreover, as real parties observe, the Legislature might reasonably believe that protecting attorney-client conversations in this context facilitates the use of mediation as a means of dispute resolution by allowing frank discussions between a mediation disputant and the disputant's counsel about the strengths and weaknesses of the case, the progress of negotiations, and the terms of a fair settlement, without concern that the things said by either the client or the lawyers will become the subjects of later litigation against either. The Legislature also could rationally decide that it would not be fair to allow a client to support a malpractice claim with excerpts from private discussions with counsel concerning the mediation, while barring the attorneys from placing such discussions in context by citing communications within the mediation proceedings themselves.

We express no view about whether the statutory language, thus applied, ideally balances the competing concerns or represents the soundest public policy. Such is not our responsibility or our province. We simply conclude, as a matter of statutory construction, that application of the statutes' plain terms to the circumstances of this case does not produce absurd results that are clearly contrary to the Legislature's intent. Of course, the Legislature is free to reconsider whether the mediation confidentiality statutes should preclude the use of mediation-related attorney-client discussions to support a client's civil claims of malpractice against his or her attorneys.

Finally, petitioner urges that application of the mediation confidentiality statutes to private attorney-client communications creates a difficult line-drawing problem because, when such discussions occur near the time of a mediation proceeding but in a broader litigation context, it may be "almost impossible" to determine whether the discussions were "exclusively" mediation related. But petitioner's suggested alternative—that *no* private attorney-client communications, however closely related to a mediation, are covered by mediation confidentiality—ignores the plain language of the statutes. By their terms, "[*n*]*o* evidence of anything said," and "[*n*]*o* writing . . . prepared" is subject to discovery or admission in evidence in any "civil action" if the utterance or writing was "for the purpose of, in the course of, or pursuant to, a mediation . . . ." (§ 1119, subds. (a), (b), italics added.) The exclusion of all private attorney-client communications from that proviso would simply engraft an exception that does not appear in the mediation confidentiality statutes themselves.

Moreover, we need not decide in this case the precise parameters of the phrase "for the purpose of, in the course of, or pursuant to, a mediation." The communications the trial court excluded from discovery and evidence concerned the settlement strategy to be pursued at an immediately pending mediation. They were closely related to the mediation in time, context, and subject matter, and a number of them occurred during, and in direct pursuit of, the mediation proceeding itself. Petitioner raises no factual dispute about the relationship between the excluded communications, or any of them, and the mediation in which he was involved. There appears no basis to dispute that they were "for the purpose of, in the course of, or pursuant to, a mediation . . . ." (§ 1119, subd. (a).)[12]

---

[12] Petitioner suggests private attorney-client communications cannot be covered by the mediation confidentiality statutes, because they are not part of the "mediation process." In support of this contention, petitioner cites *Saeta v. Superior Court* (2004) 117 Cal.App.4th 261 [11 Cal.Rptr.3d 610] for the proposition that the concept of "mediation" has limits. *Saeta* held that the mediation confidentiality statutes did not apply to the proceedings of a "termination review board" before which a discharged employee had a contractual entitlement to review of the termination decision. The board was composed of an employer representative, an employee representative, and a "neutral" third member, and was empowered to take evidence, then report to the employer's home office its view whether the termination should be upheld. (*Id.*, at p. 265.) Applying the premise that "[statutory] privileges are narrowly construed . . . because they operate to prevent the admission of relevant evidence . . ." (*id.*, at p. 272), the *Saeta* court observed that the board there at issue, which included party representatives, and whose function was to *review and recommend*, lacked two minimum elements of the "broad" definition of mediation—"a neutral mediator or group of mediators" and an "aim to facilitate a mutually acceptable result" by the parties' *voluntary agreement* (*id.*, at p. 271). Nothing in *Saeta* is inconsistent with what we conclude here. No party disputes that the proceeding of August 4, 2004, was a mediation, within the meaning of section 1115, to attempt to settle the VDO suit. The only question presented is whether certain attorney-client communications were "for the purpose of, in the course of, or pursuant to," that mediation. (§ 1119, subd. (a).)

█ We therefore conclude that the evidence the trial court ruled nondiscoverable and inadmissible by reason of the mediation confidentiality statutes was not, as a matter of law, excluded from coverage by those statutes on the mere ground that they were private attorney-client communications which occurred outside the presence or hearing of the mediator or any other mediation participant. Instead, such attorney-client communications, like any other communications, were confidential, and therefore were neither discoverable nor admissible—even for purposes of proving a claim of legal malpractice—insofar as they were "for the purpose of, in the course of, or pursuant to, a mediation . . . ." (§ 1119, subd. (a).) By holding otherwise, and thus overturning the trial court's exclusionary order, the Court of Appeal erred. We must therefore reverse the Court of Appeal's judgment.

## CONCLUSION

The Court of Appeal's judgment is reversed.

Kennard, Acting C. J., Werdegar, J., Moreno, J., Corrigan, J., and George, J.,* concurred.

**CHIN, J.,** Concurring.—I concur in the result, but reluctantly.

The court holds today that private communications between an attorney and a client related to mediation remain confidential even in a lawsuit between the two. This holding will effectively shield an attorney's actions during mediation, including advising the client, from a malpractice action even if those actions are incompetent or even deceptive.[1] Attorneys participating in mediation will not be held accountable for any incompetent or fraudulent actions during that mediation unless the actions are so extreme as to engender a *criminal* prosecution against the attorney. (See maj. opn., *ante*, at p. 135, fn. 11.) This is a high price to pay to preserve total confidentiality in the mediation process.

I greatly sympathize with the Court of Appeal majority's attempt to interpret the statutory language as not mandating confidentiality in this

---

*Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] I emphasize that I am not suggesting there was any malpractice or deception in this case. The merits of the underlying lawsuit are not before us and, after today's ruling, might never come before any court. I am speaking in general.

situation. But, for the reasons the present majority gives, I do not believe the attempt quite succeeds.

Moreover, although we may sometimes depart from literal statutory language if a literal interpretation "would result in absurd consequences that the Legislature did not intend" (*In re Michele D.* (2002) 29 Cal.4th 600, 606 [128 Cal.Rptr.2d 92, 59 P.3d 164]), I believe, just barely, that the result here does not so qualify. Plausible policies support a literal interpretation. Unlike the attorney-client privilege—which the client alone holds and may waive (Evid. Code, §§ 953, 954)—mediation confidentiality implicates interests beyond those of the client. Other participants in the mediation also have an interest in confidentiality. This interest may extend to private communications between the attorney and the client because those communications themselves will often disclose what others have said during the mediation. Additionally, as the majority notes, it might "not be fair to allow a client to support a malpractice claim with excerpts from private discussions with counsel concerning the mediation, while barring the attorneys from placing such discussions in context by citing communications within the mediation proceedings themselves." (Maj. opn., *ante*, at p. 136.)

Accordingly, I agree with the majority that we have to give effect to the literal statutory language. But I am not completely satisfied that the Legislature has fully considered whether attorneys should be shielded from accountability in this way. There may be better ways to balance the competing interests than simply providing that an attorney's statements during mediation may never be disclosed. For example, it may be appropriate to provide that communications during mediation may be used in a malpractice action between an attorney and a client to the extent they are relevant to that action, but they may not be used by anyone for any other purpose. Such a provision might sufficiently protect other participants in the mediation and also make attorneys accountable for their actions. But this court cannot so hold in the guise of interpreting statutes that contain no such provision. As the majority notes, the Legislature remains free to reconsider this question. It may well wish to do so.

This case does not present the question of what happens if every participant in the mediation *except the attorney* waives confidentiality. Could the attorney even then prevent disclosure so as to be immune from a malpractice action? I can imagine no valid policy reason for the Legislature to shield attorneys even in that situation. I doubt greatly that one of the Legislature's purposes in mandating confidentiality was to permit attorneys to commit

malpractice without accountability. Interpreting the statute to require confidentiality even when everyone but the attorney has waived it might well result in absurd consequences that the Legislature did not intend. That question will have to await another case. But the Legislature might also want to consider this point.