Filed 1/14/14  Wyner v. Porter CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| STEVEN WYNER et al., | B242025 |
| Defendants and Appellants, | (Los Angeles County Super. Ct. No. BC347671) |
| v. | |
| JOHN PORTER et al., | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** [No Change in Judgment] |
| Plaintiffs and Respondents. | |

GOOD CAUSE appearing, the opinion filed December 18, 2013, in the above entitled matter is hereby modified as follows:

1.      On page 20, line 7 from the bottom, replace "$51,000" with "$211,000".

[end of modifications]

There is no change in judgment.

The petition for rehearing by appellants Marcy Tiffany, Steven Wyner, and the Wyner Law Group is denied.

_____

RUBIN, ACTING P. J.                    FLIER, J.                    GRIMES, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| STEVEN WYNER et al., | B242025 |
| Defendants and Appellants, | (Los Angeles County Super. Ct. No. BC347671) |
| v. | |
| JOHN PORTER et al., | |
| Plaintiffs and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor E. Chavez, Judge.  Affirmed and remanded.

Robie & Matthai and Kyle Kveton, for Defendants and Appellants Steven Wyner, Marcy J.K. Tiffany and Wyner & Tiffany.

Wyner Law Group, Steven Wyner; Tiffany Law Group, Marcy J.K. Tiffany, for Cross-Complainant and Appellant Wyner & Tiffany.

Sauer & Wagner, Gerald L. Sauer and Laurie B. Hiller, for Plaintiffs, Cross-Defendants and Respondents.

_____

Steven Wyner, Marcy Tiffany, and the law firm of Wyner & Tiffany appeal from the trial court's denial of their motions for judgment notwithstanding the verdict in an action and cross-action for breach of contract and other claims initiated by their former clients, John Porter and Deborah Blair Porter. We affirm the order and remand the matter for a new trial, as previously ordered by the trial court.

## FACTS AND PROCEDURAL HISTORY[1]

1.    *Background Facts Leading to the Current Appeal*

Deborah and John Porter hired lawyer Steven Wyner in 1999 to represent them in a federal court lawsuit against their local school district and the California Department of Education in order to obtain special education services for their son under the Individuals With Disabilities Education Act (IDEA), 20 U.S.C. section 1400(d), (the underlying action).[2] The underlying action was dismissed by the federal district court, but that decision was reversed by the Ninth Circuit Court of Appeals, and the Wyner Firm later obtained partial summary adjudication for the Porters.

In April 2005 the parties to the underlying action agreed to mediate their dispute and signed a mediation confidentiality agreement that expressly applied the mediation confidentiality provisions found in Evidence Code sections 1115 through 1128.[3] The parties met with the mediator once on April 26, 2005, and then over the next few months hammered out a settlement agreement. Under that August 2005 agreement, the

---

[1]    Section 1 of our statement of the facts is synopsized from the second of our two previous decisions in this matter. (*Porter v. Wyner* (July 27, 2011, B211398) [nonpub. opn.] (*Porter II*).)

[2]    Wyner was a sole practitioner at the time. He later became partners with Marcy Tiffany and they formed the law firm of Wyner & Tiffany. Unless otherwise indicated, when we refer to the Wyner Firm, we include that firm as well as Wyner and Tiffany individually. We will refer to Wyner and Tiffany individually by their last names.

[3]    All further undesignated section references are to the Evidence Code. We discuss the mediation confidentiality statutes in detail in Section 1. of our DISCUSSION.

defendants in the underlying action paid the following: The sum of $1,131,650 for the son's education needs would be deposited into an account to be overseen by a special master; the sum of $1,580,000 would be deposited into a special needs trust for the son; the Porter Family Trust would received $2,370,000; and the Wyner Firm would receive $1,650,000 to cover its attorney's fees and costs.

After the underlying matter concluded, a festering dispute between the Porters and the Wyner Firm erupted into the action that is now before us for the third time. The Porters sued the Wyner Firm in a complaint that stated numerous causes of action. We discuss only those relevant to the issues now on appeal.[4]

The first was for rescission of an agreement the Porters entered while settlement negotiations were underway in the underlying action that called for them to obtain independent legal advice from lawyer Robert Wood about the tax ramifications of how any settlement might be structured. As part of that agreement, the Wyner Firm agreed to pay half of Wood's legal fees and the Porters agreed to release the Wyner Firm from any liability arising from Wood's advice and any adverse tax consequences caused by the settlement. The Porters alleged that they signed that agreement under duress.

The second was for breach of the Porters' fee agreement with the Wyner Firm. The dispute centered on the Porters' claim that, based on a formula contained in the fee agreement, they were entitled to a refund of more than $95,000 in fees and costs that they had already paid the Wyner Firm.

The third arose from a side agreement that allowed Deborah Porter to work as a paralegal for the Wyner Firm on both the underlying action and other unrelated matters. Pursuant to that agreement, which was modified several times, the Wyner Firm agreed to

---

**4** The Porters' complaint included a cause of action for legal malpractice that alleged the Wyner Firm gave erroneous tax advice in connection with structuring the settlement. That cause of action was dismissed before trial because the Porters could not show any damages. In addition to the causes of action we discuss, the jury considered, but rejected, claims by the Porters for fraud, constructive fraud, and breach of fiduciary duty.

3

pay Deborah Porter for those services only if any recovery obtained in the underlying action did not reimburse Deborah Porter for her unpaid wages.

The Wyner Firm cross-complained. They alleged that the Porters breached the tax advice release agreement because they refused to pay their half of the tax lawyer's fees. They also sued Deborah Porter for conversion, alleging that she took confidential case files and other information with her when she stopped working for the firm.

Up until the trial started, the Wyner Firm objected to the Porters' reliance on any evidence subject to mediation confidentiality. The Porters opposed those efforts because the settlement agreement in the underlying action included a waiver of the terms of the mediation confidentiality agreement that the parties had signed. Based in part on that, the Wyner Firm withdrew its objections and the jury heard evidence concerning statements made by, and the thought processes of, various mediation participants.

In June 2008 the jury found that the Wyner Firm owed the Porters $51,000 for breach of the fee agreement and owed Deborah Porter $211,000 for her paralegal services. It also found that the Porters were entitled to rescind the tax advice release agreement. The jury found for the Porters on the causes of action alleged in the Wyner Firm's cross-complaint.

One month later the California Supreme Court issued its opinion in *Simmons v. Ghaderi* (2008) 44 Cal.4th 570 (*Simmons*), which held that waivers of mediation confidentiality by either implication or estoppel were not permitted because the applicable statute allowed only express waivers by all (or in some case fewer than all) mediation participants. (*Id.* at pp. 582-585.) Based on the *Simmons* decision, the Wyner Firm moved for and the trial court granted a new trial on the ground that the firm's oral waiver of confidentiality at trial had been ineffective, meaning that the jury should never have heard the mediation-related evidence.

The Porters appealed from the order granting a new trial, leading to our first decision in this matter: *Porter v. Wyner* previously published at (2010) 183 Cal.App.4th 989 (*Porter I*), review granted and cause transferred on April 20, 2011, to the Court of Appeal, Second District, Division Eight, with directions to reconsider in light of *Cassel v.*

4

*Superior Court* (2011) 51 Cal.4th 113 (*Cassel*) (S182788). In *Porter I* we held that the *Simmons* rule regarding no implied waivers of mediation confidentiality did not apply in this case because the mediation confidentiality rules did not apply to communications between a party and his own lawyers. Because the Wyner Firm also brought a motion for judgment notwithstanding the verdict (JNOV), we remanded the matter to the trial court with directions to rule on that motion.

The *Cassel* court rejected our interpretation of the mediation confidentiality provisions and instead clarified that they were to be broadly construed to apply to all communications occurring during or pursuant to a mediation, even those between a disputant and his or her own lawyer. (*Cassel, supra,* 51 Cal.4th at p. 128.) On remand from the Supreme Court, we affirmed the order granting the Wyner Firm a new trial and once more remanded the matter with directions that the trial court rule on the Wyner Firm's JNOV motion. (*Porter II, supra,* B211398 at pp. 12-13.) In doing so, we noted that "evidence potentially subject to mediation confidentiality is so interwoven with otherwise admissible evidence as to require the particularized determination of admissibility that the trial courts, rather than a reviewing court, are more suited to address." (*Id.* at p. 13.) At that juncture, nothing in the record convinced us that the Wyner Firm was entitled to JNOV as a matter of law. Because both parties relied in part on evidence subject to mediation confidentiality, and because the Wyner Firm's withdrawal of its objections meant that the trial court had never ruled on those objections, we directed the trial court to rule on the JNOV motion in light of the admissible evidence after reviewing the entire record. (*Id.* at pp. 13-14.)

2.     *Facts Related to the Current Appeal*

On remand the parties filed new points and authorities in connection with the Wyner Firm's JNOV motion.[5] The Wyner Firm argued that the admissible evidence

---

[5]     From this point on our recitation of the facts is based on the record in this appeal, not from our statement of facts in *Porter II*. The Wyner Firm filed separate JNOV motions, with each tailored to either causes of action by the Porters in their complaint or

5

showed an agreement to compensate Deborah Porter for her paralegal services unless she recovered for her lost earnings in the underlying action. Because Deborah Porter sought such damages in her complaint, and because the settlement agreement stated that she was settling and releasing all her claims, the Wyner Firm contended that Deborah Porter had been compensated for her earnings by the settlement.

The Wyner Firm argued that JNOV was proper on the Porters' verdict rescinding the tax advice release agreement because there was insufficient evidence that they acted under duress or coercion and because it was undisputed that it had paid all of Wood's approximately $85,000 in legal fees while the Porters never tendered a return of the consideration for that agreement – half the cost of those fees. The Wyner Firm contended that JNOV was proper on the verdict for the Porters for breach of the fee agreement because the evidence showed that the contractual trigger for that asserted right – recovery by the Wyner Firm of a sum greater than the actual fees and costs incurred – had never occurred. Finally, the Wyner Firm contended that JNOV was proper on its conversion claim because Deborah Porter admitted that she took computer files relating to the firm's clients and had not returned them.

The Porters opposed the JNOV motion primarily on the ground that the evidence relied on by the Wyner Firm was barred by mediation confidentiality. Their opposition was supplemented by a list of 31 written objections to this evidence. In general, they objected to the following categories of evidence: The tax advice release agreement itself, and letters or other written or e-mail evidence of communications between themselves or the Wyner Firm and Wood concerning his advice on how to structure the settlement, all of which the Porters contended was inadmissible because those writings were created pursuant to the mediation process. They also objected to portions of the trial testimony of themselves and the Wyner Firm concerning the settlement and the tax advice release, as well as the testimony of the lead settlement negotiator for the defendants in the

---

causes of action by the Wyner Firm in its cross-complaint. For ease of reference we will treat them as one motion.

6

underlying action that he believed the settlement included Deborah Porter's lost income claim.

The Porters objected to the following exhibits: the tax advice release waiver; a January 18, 2005 letter from Wyner to the defendants in the underlying action outlining his settlement demands (exhibit 104); a July 19, 2005 e-mail (exhibit 430) from the Wyner Firm to the Porters attaching a letter from defense counsel concerning settlement proposals and drafts of settlement documents; two May 2005 letters, one from the Wyner Firm to Wood, and the other from Wood to the Porters (exhibit 144), concerning events at the mediation along with comments concerning the best structure for an eventual settlement in regard to tax liability; Deborah Porter's handwritten notes of a May 6, 2005, conference call between Wood and Steven Wyner that includes both tax consequence information as well as statements concerning expert witnesses and matters related to the negotiations; a May 4, 2005 e-mail to Deborah Porter concerning the tax consequences of including lost wages or profits in the settlement that also references an upcoming visit to a tax law expert (exhibit 123); letters and e-mails from the Wyner Firm to the Porters in July 2005 concerning the terms of the then-proposed tax advice release agreement (exhibits 35, 36, 38); a May 17, 2005 letter from the Porters to the Wyner Firm concerning the firm's attempt to renegotiate their fee agreement, as well as issues concerning the conduct of settlement negotiations (exhibit 43); an October 16, 2005 e-mail from Deborah Porter to Wood concerning her dispute with the Wyner Firm over payment of Wood's fees (exhibit 72).

The Porters also objected to the following trial testimony: testimony by a lawyer named Feldhake, who was the lead settlement negotiator for the defendants in the underlying action, concerning events or statements made during the mediation, his own perceptions or intent concerning the payment structure of the settlement, or his perceptions about the Porters' intent; testimony by Wyner concerning the evolution of the parties' settlement proposals; testimony by Deborah Porter about why Wood was hired; testimony by John Porter about a conversation with the Wyner Firm concerning the payment of Wood's fees; testimony by Deborah Porter about a conversation she had with

Wyner in or around July 2005 concerning his alleged attempt to increase his fee recovery at the expense of the Porters' recovery; testimony by Wyner as to whether he had concerns about his response to exhibit 43 and whether his relationship with the Porters was in jeopardy; testimony by Wyner about whether he ever indicated he would stop representing the Porters if they did not sign the tax advice release; testimony by Deborah Porter about the negotiations surrounding the tax advice release; testimony by Deborah Porter that Wood told her none of the settlement proceeds would be taxable; testimony by Deborah Porter that the Porters never paid for Wood's services; testimony by Deborah Porters about communications with Wood between May and October 2005 about the contents of and changes to the settlement agreement; and testimony by Deborah Porter about a conversation with Steven Wyner about the proposed settlement agreement and its effect on his fees.

The Wyner Firm made a multi-pronged response to these evidentiary objections. First, it contended that the mediation ended on May 6, 2005, when 10 days elapsed from the one-day mediation session without any communication between the mediator and any of the participants. (§ 1125, subd. (a)(5).) Because most of the communications and exhibits to which objections were raised occurred after that date, they were not confidential, the Wyner Firm contended. Second, it contended that the testimony of the Porters or Feldhake was not confidential either because it concerned matters that occurred after mediation ended or that implicated Feldhake's work product or personal knowledge about the nature of the Porters' claims. Third, some of the materials were created before mediation began and were therefore not confidential.

The Porters responded by submitting a copy of the parties' mediation confidentiality agreement, pointing out that it expressly waived the termination by 10-days' silence period, meaning that the mediation did not end until the settlement was reached. (§ 1125, subd. (a)(1).) Accordingly, communications between the Porters and the Wyner Firm, as well as with tax lawyer Wood, remained confidential, the Porters contended. Both parties also submitted numerous exhibits and excerpts of testimony that each considered admissible or inadmissible under the mediation confidentiality

provisions. Of these, 124 objections to evidence were raised by the Porters and seven were raised by the Wyner Firm

Finally, the Wyner Firm contended that the purported waiver of the termination by 10-days' silence provision in the confidentiality agreement did not modify the mediation termination date because the applicable statute required the signature of the mediator, which was missing from the purported waiver. Alternatively, the firm argued that the confidentiality agreement itself was confidential and therefore inadmissible.

The trial court found that the mediation confidentiality agreement signed by the parties to the underlying action was properly disclosed under section 1122, subdivision (a)(2) because it did not disclose anything said or done in the course of mediation and was prepared by or on behalf of fewer than all the mediation participants. Because that agreement included an express waiver of the statutory provision that a mediation automatically terminated if 10 days passed without communications from the mediator, the trial court found that the mediation did not end until the parties to the underlying action finalized their settlement in August 2005. (§ 1125, subd. (a)(1).) As a result, the trial court found, mediation confidentiality lasted until that time, spanning the period covered by most of the documents and other evidence that Wyner's JNOV motion relied on. The trial court then sustained each of the Porters' initial 31 objections to the evidence relied upon by the Wyner Firm in its JNOV motion.

The trial court then found that, except for the Wyner Firm's conversion cause of action against Deborah Porter, the remaining claims and defenses at issue in the JNOV motion were "entirely reliant on evidence that is subject to mediation confidentiality." As a result, the trial court denied the JNOV motion as to those claims. The trial court also denied the JNOV motion as to the conversion cause of action because it "decline[d] to reweigh the conflicting evidence, judge the credibility of witnesses, or choose among the various reasonable inferences a trier-of-fact might draw from the remaining admissible evidence."

The Wyner Firm contends the trial court erred for several reasons: (1) the mediation confidentiality agreement was itself confidential and should not have been

9

considered by the court; (2) even if that agreement was not confidential, the purported waiver of the 10-day silence period was ineffective, meaning that evidence of communications after May 6, 2005, was prohibited; (3) the trial court was wrong when it concluded that all the relevant claims and defenses except for conversion were entirely reliant on evidence protected by mediation confidentiality; (4) certain exhibits and testimony were not subject to mediation confidentiality because they occurred long before mediation began (exhibit 104), or concerned the tax advice release and communications related to that agreement, which were unrelated to the mediation for purposes of the confidentiality rules; (5) the trial court erred by not ruling on the parties' 131 supplemental evidentiary objections; (6) JNOV should have been granted on the verdict rescinding the tax advice release because the agreement was admissible and there was no evidence of duress or that the Porters tendered restoration of the consideration they received; (7) likewise, JNOV should have been entered for the Wyner Firm on its cause of action for breach of the tax advice release because it was undisputed that the Porters failed to pay their share of Wood's fees; (8) JNOV should have been granted on the verdict awarding Deborah Porter her unpaid wages because it was undisputed that she recovered those wages in the settlement of the underlying action; (9) JNOV should have been granted on the breach of contract verdict awarding the Porters $51,000 in fees and costs they paid the Wyner Firm because under the terms of that agreement the firm did not recover a sufficient amount of its fees and costs from the settlement of the underlying action to trigger that obligation; and (10) JNOV should have been entered for the Wyner Firm on its conversion claim because it was undisputed that Deborah Porter took copies of confidential client files when she stopped working for the firm.

## STANDARD OF REVIEW

A trial court may grant JNOV only if, when viewed in the light most favorable to the party in whose favor a verdict was rendered, there is no substantial evidence to support the verdict. The trial court cannot weigh the evidence or judge witness credibility. If the evidence is conflicting or if reasonable inferences to support the verdict

10

may be drawn from the evidence, the motion should be denied. (*Linear Technology Corp. v. Tokyo Electron Ltd.* (2011) 200 Cal.App.4th 1527, 1532.) We exercise independent review of the trial court's order granting JNOV. This requires us to resolve all conflicts, draw all inferences, and otherwise view the evidence in favor of the party opposing JNOV. (*Ibid.*) Issues of statutory construction raise questions of law, however, and where the facts applicable to such issues are undisputed, we exercise de novo review. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 284.)

## DISCUSSION

*1.      The Law Regarding Mediation Confidentiality*

The statutes governing mediation confidentiality are found at sections 1115 through 1128. The general admissibility of oral and written communications generated during the mediation process is controlled by section 1119. Under that provision, no evidence of anything said or any admission made "for the purpose of, in the course of, or pursuant to, a mediation" is admissible or subject to discovery, and its disclosure shall not be compelled in any civil action. (§ 1119, subd. (a).) This applies to any writings "prepared for the purpose of, in the course of, or pursuant to, a mediation . . . ." (§ 1119, subd. (b).) "All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." (§ 1119, subd. (c).)

Mediation participants may waive, at least in part, the confidentiality of otherwise protected mediation-related communications. First, all mediation participants may expressly agree in writing, or orally if statutory requirements are met, to waive confidentiality. (§ 1122, subd. (a)(1).) Second, if a mediation-generated communication was prepared by or on behalf of fewer than all the participants, then those participants may agree in writing or orally to disclose the communication so long as that communication does not disclose anything said or done in the course of the mediation. (§ 1122, subd. (a)(2).)

11

The purpose of these provisions is to encourage mediation of disputes by assuring that communications made in connection with such a proceeding will not later be used against a participant. (*Cassel, supra,* 51 Cal.4th at pp. 123-124.) The statutes therefore bar disclosure of mediation communications absent an express statutory exception. (*Id.* at p. 124.) Judicially crafted exceptions or judicial construction are allowed only where due process is implicated or where a literal construction would produce absurd results that clearly violate the Legislature's presumed intent. (*Ibid.*) Otherwise the mediation confidentiality provisions must be strictly applied according to their plain terms. "Where competing policy concerns are present, it is for the Legislature to resolve them." (*Ibid.*)

In accord with these principles, the mediation confidentiality statutes have been broadly construed. Sanctionable conduct occurring during or in the course of a mediation is confidential and may not be disclosed for the purpose of seeking sanctions. (*Foxgate Homeowners Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 13-14, 17.) Writings prepared for the purpose of a mediation include a lawyer's work product such as charts, diagrams, expert reports, photographs and transcriptions of witness statements. (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 416-417.) The doctrines of estoppel and implied waiver do not apply to mediation confidentiality and disclosure is permitted only pursuant to the applicable statutory provisions. (*Simmons, supra,* 44 Cal.4th at pp. 582-585.) Lawyers and their clients are each treated separately as mediation participants and communications between a client and his own lawyer that are related to mediation proceedings are confidential. (*Cassel, supra,* 51 Cal.4th at p. 128.)

2.      *Mediation Confidentiality Extended to August 2005*

  A.      The Trial Court Properly Reviewed the Mediation Confidentiality
          Agreement to Determine the Time Period

In deciding what evidence is subject to mediation confidentiality, we must first determine the relevant time period. In other words, it is critical to know when the mediation started and ended. The start date is not in dispute.

12

The Porters opposed the Wyner Firm's JNOV motion in part on the ground that mediation ended when a settlement of the underlying action was reached (§ 1125, subd. (a)(1)), a time period that covered all the evidence submitted in support of the Wyner Firm's JNOV motion. The Wyner Firm's reply points and authorities and response to the Porters' evidentiary objections argued that mediation ended 10 days after the lone April 26, 2005 mediation session because there were no communications between the mediator and any of the parties to the mediation during that 10-day period. (§ 1125, subd. (a)(5).) The Porters filed a supplemental response that included the mediation confidentiality agreement signed by the parties to the underlying action on Apri 26, 2005. Paragraph 4 of that agreement provided: "The privileged character of any information or documents is not altered by disclosure to the mediator. The mediation process may continue after the date appearing below. Therefore, the mediator's subsequent oral and written communications with the mediation participants in a continuing effort to resolve the dispute are subject to this Agreement. Accordingly, the parties waive the automatic termination provisions of section 1125(a)(5)."

Based on this, the Porters argued that the mediation process did not end when 10 days passed without communications with the mediator and instead continued while the parties negotiated and did not end until a settlement was reached three months later in August 2005. Accordingly, they reasoned, mediation confidentiality applied to mediation-related communications during that extended period. The trial court agreed and used the August 2005 time period when determining whether certain communications were protected by mediation confidentiality.

In order to reach this result, the trial court found that the mediation confidentiality agreement could be disclosed under section 1122, subdivision (a)(2) because the disclosure was made by fewer than all the mediation participants and did not disclose anything said or done during the mediation. The Wyner Firm contends this was error because those participants did not expressly agree in writing to the disclosure, and because the mediation confidentiality agreement was not part of the trial record.

13

The Porters do not address the Wyner Firm's contention that an express written waiver by all parties was required to disclose the confidentiality agreement. Instead, they analogize this situation to the trial court's ability to examine purportedly privileged documents in order to determine whether they are in fact privileged. The cases they rely on concern privileges such as those arising from the lawyer-client or doctor-patient relationship or matters governed by other statutory schemes, and are therefore inapplicable. (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1619 [discovery of reinsurance documents claimed to include lawyer work product or privileged communications]; *In re Maria V.* (1985) 167 Cal.App.3d 1099, 1103 [disclosure of juvenile records].) We agree with the Wyner Firm that resolution of this issue turns upon our construction of the mediation confidentiality statutes.

We may forego a strict construction of the mediation confidentiality statutes in order to avoid an absurd result. (*Cassel, supra,* 51 Cal.4th at pp. 123-124.) We may also affirm the trial court's order on any proper basis, whether or not relied upon by that court. (*Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1312.) We directed the trial court to determine which evidence was admissible and which was protected by mediation confidentiality before determining the Wyner Firm's JNOV motion. The parties dispute when the mediation ended, a critical threshold question that must be answered in order to resolve this matter, and one that probably arises whenever a trial court is called upon to consider whether evidence is subject to mediation confidentiality.

In this case, the parties selected different dates. According to the Porters, the mediation ended when a settlement was reached in August 2005. The Wyner Firm countered that the mediation ended in May 2005 because the mediator did not communicate with the parties for more than 10 days. The Porters contended that the 10-day silence provision had been expressly waived. It would stand the mediation confidentiality scheme on its head to prohibit the trial court from examining a written agreement that arguably contained such a waiver. Without it, the trial court would have no way of choosing between two alternative ending dates. We therefore hold that on the

14

particular circumstances of this case, the trial court could examine the confidentiality agreement for the sole purpose of making a finding as to when mediation ended in order to consider the applicable time period of confidentiality.

B. The Parties to the Underlying Action Waived Section 1125, Subdivision (a)(5)

As noted above, the mediation confidentiality agreement stated that the parties waived section 1125, subdivision (a)(5). The Wyner Firm contends this purported waiver was ineffective because: (1) the statute says that the mediator and the parties may "shorten or extend this time by agreement" and the mediator did not sign the agreement; (2) the agreement was also not signed by one of the mediation participants, a party named Thompson; and (3) even if the waiver was effective in the abstract, the waiver provision was modified by the condition that there must be some communications with the mediator after the 10-day period elapses. We begin with the first and third contentions.

The Wyner Firm contends that the waiver provision was no different from an agreement to modify or extend the 10-day period provided by section 1125, subdivision (a)(5). We disagree. Parties are free to waive statutory provisions whose primary purpose is not to serve a public benefit. (Civ. Code, § 3513; *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1166.) The parties to the underlying action did not shorten or expand the time period by which the absence of communications with the mediator automatically terminates the mediation process. They eliminated it entirely.

The Wyner Firm argues that this waiver was conditioned upon the occurrence of communications with the mediator after the 10-day period elapsed. However, they ignore the preceding sentence, which states that the "mediation process may continue after the date appearing below." As we read it, that sentence modifies the following one, which states that later communications between the mediator and the participants would be subject to the confidentiality agreement. In other words, the parties did not want the 10-

15

day cutoff period to apply at all, and wanted to make clear that if any communications with the mediator took place after that date, they too would be confidential. However, the provision does not state that the waiver applied *only* if there were such later communications. We believe that our interpretation is consistent with the mediation confidentiality provisions because it permits the parties to expand the confidentiality time period.

As for the supposed failure of one party –Thompson – to sign the mediation confidentiality agreement, we note that the agreement states it could be signed before, during, or after the mediation. We also note that Thompson signed the settlement agreement in the underlying action, which called for all parties to expressly waive the provisions of the confidentiality agreement. Because Thompson could not validly waive an agreement she had never signed, we believe this presented a question of fact as to whether she signed the confidentiality agreement at some later time. Because our task is to affirm the trial court's denial of JNOV where our independent review of the record shows there is any substantial evidence to support the verdict (*Shapiro v. Prudential Property & Casualty Co.* (1997) 52 Cal.App.4th 722, 730), the existence of this evidence compels us to reject the Wyner Firm's contention.

3.   *The Trial Court Did Not Err By Failing to Rule On All of the Parties' Evidentiary Objections*

In addition to the Porters' 31 objections to the evidence cited in the Wyner Firm's JNOV points and authorities, both parties submitted documentary evidence and numerous excerpts of trial testimony that each contended was either admissible or inadmissible under the rules of mediation confidentiality. In all, the parties raised 131 objections, nearly all of those by the Porters. Although the trial court ruled on the Porters' initial 31 objections to the evidence cited in the JNOV motion, it did not rule on the parties' combined 131 objections. The Wyner Firm contends the trial court's failure to do so compels a reversal of the order denying its JNOV motion. We disagree.

16

First, none of the decisions cited by the Wyner Firm is applicable. Two of them –
*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386 and *In re Marriage of Gray*
(2007) 155 Cal.App.4th 504 – arose from very different procedural contexts and stand for
the general proposition that a trial court's failure to exercise discretion is an abuse of
discretion. (*Gray* at p. 515 [trial court's failure to equally divide pension benefits in
marital dissolution case]; *Fletcher* at p. 392 [failure to apply the law to the facts in
*Pitchess* motion for discovery of police personnel files].)

Two others concern the failure to rule on evidentiary objections, but are also
inapplicable. The first – *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1348 –
concerned the trial court's failure to rule on evidentiary objections as part of its statutory
duty to determine whether the plaintiff defending a SLAPP motion produced evidence
showing a probability of prevailing on the merits. The second – *Parkview Villas Assn.,
Inc. v. State Farm Fire & Casualty Co.*(2005) 133 Cal.App.4th 1197, 1217 – concerned
the trial court's failure to rule on evidentiary objections made in opposition to a summary
judgment motion. Even though *Parkview Villas* arose in an entirely different context, it
is instructive here because the Court of Appeal noted the rule that evidentiary objections
are waived where the objecting party does not ask the trial court to rule on the objections.
(*Ibid.*) That rule did not apply in *Parkview Villas*, the court held, because the objecting
party reminded the trial court about its desire for a ruling at the start of the hearing on the
motion and the trial court assured the defendant that it had taken the objections under
submission. (*Ibid.*)

The Wyner Firm does not contend, and the record does not show, that after the
objections were initially made, it ever sought assurances from the trial court that the court
would rule on the objections, or that the Wyner Firm raised the issue after the trial court
issued its ruling. We therefore deem the issue waived.

The Wyner Firm also contends that the trial court violated our disposition in
*Porter II, supra,* where we directed the court to "rule on the JNOV based upon a review

17

of the entire trial record." The Wyner Firm conflates a failure to rule on evidentiary rulings with a failure to review the entire record. We do not see it that way, however.[6]

4.      *The Trial Court Did Not Err By Denying JNOV On the Wyner Firm's Conversion Claim*

The Wyner Firm contends the trial court erred by denying its JNOV motion on its conversion claim because Deborah Porter admitted taking electronic copies of confidential client files when she stopped working at the firm as a paralegal. The testimony they rely on came in response to the following question: "And you took documents relating to files other than your son, including notes you had taken relating to those cases; isn't that right?" Porter replied, "I took my files."

The Wyner Firm points to the testimony of Marcy Tiffany that she saw "documents relating to our other clients" on electronic media produced during discovery. First, the jury was entitled to disregard that testimony. Second, even if Porter took documents "relating to" the firm's clients, that is a fairly ambiguous characterization in light of Porter's claim that she took only her own files, because those files may have in some way related to the clients without containing any confidential material.

5.      *The Trial Court Properly Denied JNOV on the Remaining Causes of Action*

   A.      <u>These Causes of Action Were Not Entirely Reliant on Confidential Mediation-Related Evidence</u>

We agree with the Wyner Firm that the trial court erred by concluding that apart from the Wyner Firm's conversion claim, the causes of action at issue in the JNOV motion were "entirely reliant" on evidence subject to mediation confidentiality. For

---

[6]      At a hearing on the Porters' ex parte motion to correct an alleged error in the trial court's JNOV ruling, the trial court took umbrage at the suggestion that the court had not read the record and made plain that it had in fact reviewed the entire record. The trial court blamed the Wyner Firm for that accusation, but the parties dispute who actually made it. The trial court never ruled on the ex parte motion because by then the Wyner Firm had filed its notice of appeal.

instance, the Porters' cause of action for breach of the fee agreement turned in large measure on the terms of that agreement and its various modifications, along with evidence concerning the amount of fees and costs billed by the Wyner Firm as measured against its recovery in the settlement of the underlying action. The Porters do not contend, and rightly so, that such evidence is subject to mediation confidentiality. The same is true as to Deborah Porter's cause of action for unpaid wages, which turns at least in part on the terms of her side agreement with the Wyner Firm and the provisions of the settlement in the underlying action. However, as previously mentioned, under the applicable standard of review we must affirm the order denying JNOV if our independent review of the record shows there was substantial evidence to support the verdicts that was not subject to mediation confidentiality. As set forth in the ensuing subsections, we conclude there was such evidence.

B.   The Trial Court Properly Denied JNOV on the Porters' Cause of Action For Breach of the Fee Agreement

The initial fee agreement between the Porters and the Wyner Firm was signed in October 2000. Under paragraph 5, the Porters agreed to pay the firm at its hourly rate. Paragraph 9 provided that if the Porters prevailed at trial or a settlement was reached, and if as a result the firm recovered the total amount of fees and costs billed on the case, then it would refund the Porters the amounts they had paid, but only to the extent that the fees recovered exceeded the amounts the Porters had paid.

In August 2003 paragraph 5 of the fee agreement was amended to provide for either a contingency fee or payment for time billed at the firm's hourly rates. Under this new arrangement the Wyner Firm would collect on an hourly rate basis if its fees under that method exceeded the amount payable as contingent fees. Likewise, if the contingent fee exceeded fees at hourly rates, then the firm would be paid under the contingency fee formula. Regardless of those provisions, however, paragraph 5.2.3.3 stated that if the Porters prevailed, the firm would seek to recover its fees at its hourly rates from the defendants in the underlying action. The amendment stated that all other provisions of the

19

original fee agreement remained in effect to the extent they were "not superceded *[sic]* by the provisions contained herein."

Under the fee agreement, the Porters were entitled to a refund of any amounts they paid up front as fees and costs, but only to the extent that the fees and costs recovered by the firm exceeded the amount billed on an hourly rate basis. The firm recovered $1.65 million in fees and costs from the settlement. In September 2005, after the underlying action settled, the Wyner Firm sent the Porters a recap of its costs and fees.

The recap claimed that, as calculated on an hourly rate basis, the firm's actual fees and costs entitled the Porters to a refund of more than $4,000. The recap, thus, constituted substantial evidence that the Wyner Firm had breached the fee agreement. On appeal, the Wyner Firm contends that this obligation will be extinguished if we reverse the order denying JNOV on the Porters' cause of action to rescind the tax advice release and instead order JNOV for the Wyner Firm because the additional money the Porters will owe as a result will change the calculations in the Wyner Firm's favor. As set forth below, however, we affirm the order denying JNOV of the rescission verdict. We therefore reject the Wyner Firm's contention.

C.      The Trial Court Properly Denied JNOV on Deborah Porter's Wage Claim

In order to help defray legal fees and costs, Deborah Porter and the Wyner Firm entered a side agreement whereby Deborah Porter worked as a paralegal for the firm on her case and others. The agreement stated that the firm would compensate her for her work unless she recovered for her lost wages as the result of a settlement or trial. The jury in the present case awarded her $51,000 for breach of this agreement. The Wyner Firm contends it was entitled to JNOV on this claim because the settlement agreement included a release of all the Porters claims, which necessarily included the claim she asserted for lost income.

In examining this claim, we disregard any testimony by Feldhake, Wyner, or the Porters concerning either events occurring during the mediation-related settlement negotiations or their subjective beliefs about those matters. Such evidence, we believe, is

20

protected by mediation confidentiality. However, evidence that is not within the scope of that protection exists and is sufficient to support the jury's verdict.

The settlement in the underlying action allocates the total proceeds into various categories: a special master's fund for the Porter child's educational needs; a special needs trust for the child; the Porter Family Trust; and attorney's fees and costs. Only the funds allocated to the family trust could arguably cover Deborah Porter's lost wages claim. However, the settlement also stated that the settlement funds were being paid "for and consistent with" the purposes of IDEA under 20 U.S.C. section 1400(d). This was echoed in the federal court's ORDER APPROVING MINOR'S COMPROMISE in the underlying action. Prepared by the Wyner Firm, it stated that the Porters' injuries resulted from the defendants' failure to provide proper education services to their son, resulting in damages to the son's academic and social well-being, and that the settlement was "being paid exclusively for, and consistent with, the purposes set forth in [20 U.S.C. section 1400(d) of the IDEA]."

Lost wages are not compensable under the IDEA. (*Kutasi v. Las Virgenes Unified Sch. Dist.* (2007) 494 F.3d 1162, 1168.) Therefore, the settlement terms could lend themselves to an inference that the parties to the underlying action did not include Deborah Porter's wage claim in the settlement. As the Wyner Firm pointed out at oral argument, the settlement agreement also refers to the Porters' companion claim under section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794(a)), which does allow for the recovery of various tort damages. (*A.W. v Jersey City Public School* (2007) 486 F.3d 791, 804.)

However, the settlement agreement in the underlying action provided that the parties would treat and report the settlement allocation for tax purposes under federal and state law. There is no evidence that the defendants in the underlying action ever reported any portion of the settlement proceeds as a payment of taxable income to Deborah Porter. The Porters testified that they never reported the settlement proceeds as taxable income, and no government tax agency had ever claimed the proceeds were taxable income. When combined with the terms of the settlement and order approving minor's

21

compromise, we believe this evidence supports an inference that the settlement did not include money for Deborah Porter's lost wages, and that JNOV was properly denied.[7]

### D. The Trial Court Did Not Err By Denying JNOV on the Porters' Rescission Cause of Action

The Porters' cause of action to rescind the tax advice release agreement was based on their claim that they entered that agreement under duress when the Wyner Firm pressured them into signing it, in part by threatening to abandon them in the final week of settlement negotiations. The trial court denied JNOV after concluding that all the evidence associated with this cause of action – including not just the parties' testimony about what happened, but the release itself and testimony and exhibits relating to communications with the tax lawyer – was protected by mediation confidentiality.

The Wyner Firm contends that the trial court erred, and that the tax advice release, along with evidence of conversations between and among the Wyner Firm, Wood, or the Porters, was all admissible because the tax advice release was unrelated to the mediation. Because of how the Wyner Firm has raised the issues on appeal, however, we need not decide the admissibility question. Instead, assuming for the sake of discussion only that the evidence relied on by the Wyner Firm was in fact admissible, it has waived one of the two issues it has raised on appeal as a ground for reversal.[8]

Pointing to excerpts of the Porters' trial testimony, the Wyner Firm contends this evidence was insufficient to show duress. However, the firm cites just one authority – *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1158 –

---

**7** We also question whether any of the money the Wyner Firm owed Deborah Porter could have truly been classified as lost income in the underlying action.

**8** We will point out, however, that the *Cassel* court made clear that it did not reach the issue of whether any particular communications were in fact mediation related, and instead answered only the question whether mediation confidentiality extended to communications between a client and his own lawyer in the abstract. (*Cassel, supra,* 51 Cal.4th at p. 123, fn. 3.) Therefore, *Cassel* does not determine whether the tax advice release or any of the communications related to that release were confidential.

22

for the proposition that the Porters had to show a sufficiently coercive act in order to prove their claim. Apart from that one hornbook point of law, they cite no other authority and do not address how the evidence as they see it fails to establish coercion or duress under the applicable legal principles. As a result, we deem that issue waived. (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [failure to cite pertinent or cognizable legal authority].)

The other issue raised by the Wyner Firm concerns the requirement that a party seeking to rescind a contract must offer to restore to the other party everything of value that he received under the contract. (Civ. Code, § 1691, subd. (b).) The Porters do not address this issue, relying instead on their contention that none of the evidence concerning the tax advice release was admissible.[9] However, our independent review of the record has turned up at least one piece of evidence to rebut the Wyner Firm's contention.

The Porters alleged in their complaint that the Wyner Firm stopped Wood from issuing his final opinion letter in October 2005 because his opinions might have an effect on the firm's dispute with the Porters. Tiffany testified that this in fact happened. The rule requiring the restoration of consideration as a prerequisite to rescission does not apply where the rescinding party received nothing of value. (*M. F. Kemper Construction Co. v. Los Angeles* (1951) 37 Cal.2d 696, 703.) If the Porters did not receive a final opinion letter from Wood, then the jury could infer that they received nothing of value from his advice. This may well constitute substantial evidence that the Porters were excused from the restoration requirement.[10] At a minimum, given the absence of argument by either party on this evidence, we cannot say as a matter of law whether or

---

[9] We find this a curious argument because, as the Wyner Firm points out, if there is no admissible evidence concerning the agreement, then the Porters would necessarily be unable to prove their claim for rescission.

[10] We also note that the jury instructions on rescission do not ask the jury to make a finding on the restoration issue. The Wyner Firm does not raise this instructional omission as an issue on appeal.

not the consideration issue is in fact dispositive. As a result, we believe the issue is best left for the trial court on retrial.

Because the Wyner Firm's JNOV motion on its cross-claim for breach of the tax advice release necessarily hinged upon first granting JNOV for the firm on the Porters' cause of action to rescind that agreement, we also affirm the order denying the firm's JNOV motion on that cause of action as well.

## DISPOSITION

We affirm the order denying the Wyner Firm's JNOV motion. The matter is remanded to the superior court in accordance with our decision in *Porter II, supra,* to affirm the order granting a new trial. Because we have reached only a handful of the mediation confidentiality admissibility issues raised by the parties, we leave those issues to the trial court to decide them in the first instance in connection with a new trial. Each party shall bear its own costs on appeal.


                                              RUBIN, ACTING P. J.

WE CONCUR:



            FLIER, J.



            GRIMES, J.


24