Filed 4/3/25  Beach v. Johnson, Rovella, Retterer, Rosenthal & Gilles CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD BEACH, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JOHNSON, ROVELLA, RETTERER, ROSENTHAL & GILLES, LLP, <br><br> Defendant and Respondent. | H051523 <br> (Monterey County <br> Super. Ct. No. 19CV001506) |

After settling a personal injury suit in mediation, Richard Beach sued Johnson, Rovella, Retterer, Rosenthal & Gilles, LLP (JRG), the firm that had represented him. Beach alleged that he relied in settling on JRG's advice two days before the mediation that a net settlement of at least $1 million could provide him $9,332.74 per month tax free for the rest of his life or 10 years, whichever was longer. After discovering that JRG's advice was incorrect, Beach sued. Granting summary judgment for JRG, the trial court ruled that JRG's pre-mediation financial advice was inadmissible. Beach challenges the trial court's application of the mediation privilege, but we agree with the trial court. We affirm.

## I.  BACKGROUND

Beach's lower right leg was amputated after a motor vehicle accident. He retained JRG, which filed a personal injury suit on his behalf in May 2017. During a December 2018 mediation, Beach accepted a $2 million settlement.

In this action, Beach is pursuing claims against JRG for professional negligence, breach of fiduciary duty, fraudulent misrepresentation, and negligent misrepresentation.[1]

Beach alleged as follows. JRG advised him that his claims were worth between $5 million and $5.5 million. But in a December 4, 2018 mediation preparation meeting, JRG advised him to expect an offer of $2.7 million to $3.5 million in the December 6 mediation. Immediately following the mediation preparation portion of that meeting, JRG advised him that a net settlement recovery of at least $1 million could purchase an annuity that would pay him $9,332.74 per month tax free for life or for the next 10 years, whichever was longer. JRG advised him that this could be achieved by accepting a $2 million full settlement. At the mediation two days later, Beach relied on this advice in accepting a $2 million total settlement. But after settling the case Beach learned that the net settlement recovery of $1 million could not secure the monthly income JRG had projected.

JRG secured summary judgment. The trial court ruled that the communications preceding the mediation about the fixed monthly income Beach could obtain were inadmissible due to the mediation privilege, and Beach could not establish any cause of action without the privileged communications. Beach timely appealed.

## II.    DISCUSSION

### A.    *Standard of Review*

We review de novo the trial court's decision to grant summary judgment. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767, citing Code Civ. Proc., § 437c, subd. (c).) In so doing, we "view the evidence in a light favorable to plaintiff as the [opposing] party [citation], liberally construing [their] evidentiary submission while

---

[1] Beach's operative complaint also included a cause of action for breach of contract, which Beach had dismissed without prejudice before summary judgment.

strictly scrutinizing defendant[’s] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff’s favor.” (*Saelzler*, at p. 768.)

Although we review de novo, it is Beach’s burden, as the appellant, to show error. (*Villalobos v. City of Santa Maria* (2022) 85 Cal.App.5th 383, 388.) Accordingly, we direct our attention to Beach’s appellate contentions and do not ourselves “ ‘ “cull the record for the benefit of the appellant . . . to attempt to uncover . . . triable issues.” ’ ” (*Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1519 (*Golightly*); see also *Helm v. City of Los Angeles* (2024) 101 Cal.App.5th 1219, 1228, fn. 5.)

**B.    *Mediation Privilege***

Evidence Code section 1119, codifying the mediation privilege, generally makes “[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation” confidential. (Evid. Code, § 1119, subd. (c).)[2] The mediation privilege extends to attorney-client communications that are made “ ‘for the purpose of, in the course of, or pursuant to, a mediation,’ ” which are “neither discoverable nor admissible—even for purposes of proving a claim of legal malpractice.” (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 138 (*Cassel*); see also § 1119, subds. (a)–(b).)  “ ‘Communications between counsel and client that are materially related to the mediation, even if they are not made to another party or the mediator, are “for the purpose of” or “pursuant to” mediation.’ ” (*Cassel*, at p. 135.)

Beach contends that the trial court erred in ruling that the mediation privilege rendered inadmissible JRG’s pre-mediation representation about the monthly income a net settlement of at least $1 million would provide him. We agree with the trial court’s ruling because JRG’s pre-mediation representation was materially related to the mediation. Identifying no independent challenge to the judgment, we will affirm.

---

[2] Undesignated statutory references are to the Evidence Code.

We recognize the inequity of this result on the undisputed facts. But, following *Cassel*, we lack authority to substitute our judgment for the Legislature's or to deviate from the governing statutes in the belief they fail to "ideally balance[] the competing concerns or represent[] the soundest public policy." (*Cassel*, *supra*, 51 Cal.4th at p. 136.) "[R]eluctantly" concurring in the judgment, Justice Chin observed that "[a]ttorneys participating in mediation will not be held accountable for any incompetent or fraudulent actions during that mediation unless the actions are so extreme as to engender a *criminal* prosecution[,] . . . [Citation.] . . . a high price to pay to preserve total confidentiality in the mediation process." (*Id*. at p. 138 (conc. opn. of Chin, J.).) While Justice Chin "greatly sympathize[d] with the Court of Appeal majority's attempt to interpret the statutory language as not mandating confidentiality in this situation," he agreed that the Court of Appeal had erred. (*Id*. at pp. 138–139 (conc. opn. of Chin, J.).) We acknowledge the plight Beach describes, but we are bound by *Cassel*. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) And *Cassel* forecloses Beach's claim of error.

Beach asserts that summary judgment was improper because the parties disputed whether JRG's communications were made in the mediation context. But there was no material dispute about what JRG's attorneys said, when they said it, or whether Beach relied on those representations at the mediation in deciding to settle his case. Beach merely disputed whether the context for the communications is best characterized as a mediation preparation meeting or a meeting that separately addressed mediation preparation and Beach's opportunities for annuitizing or structuring a settlement payment. Accepting Beach's characterization of the meeting, the communications are privileged because on the undisputed facts they were materially related to the mediation, and therefore the communications were " 'for the purpose of, in the course of, or pursuant to, a mediation.' " (*Cassel*, *supra*, 51 Cal.4th at p. 138.) Reviewing de novo, we uphold

the trial court's determination that JRG's pre-mediation communications were privileged.[3]

We reject Beach's threshold premise that the fact-specific application of the mediation privilege, which courts must address in deciding the admissibility of evidence, is reserved for the trier of fact. It is for the trial court, not the trier of fact, to decide whether evidence is admissible. Trial courts may and do resolve foundational factual disputes in ruling on the admissibility of evidence. (See § 402; *People v. DeHoyos* (2013) 57 Cal.4th 79, 133 [hearsay context].)

Contrary to Beach's argument, *Cassel* does not suggest that whether the mediation privilege applies is an issue for the fact finder at trial. In *Cassel*, our Supreme Court applied "the mediation confidentiality statutes to the facts of [the] case." (*Cassel*, *supra*, 51 Cal.4th at p. 119; see *id*. at pp. 137–138.) Analyzing those facts, the high court identified "no basis to dispute that" the communications were covered by the statutes, and so upheld the trial court's in limine ruling that the communications were nondiscoverable and inadmissible at trial. (*Id*. at pp. 137–138.) Nothing in *Cassel* suggests that a jury has a role in deciding whether the mediation privilege applies.

Here, viewing the summary judgment record in the light most favorable to Beach, the trial court correctly determined that JRG's statements at the December 4 meeting were inadmissible.

---

[3] Although the challenged portion of the trial court's ruling could superficially be construed as a ruling on the admissibility of evidence, the trial court was at bottom assessing whether JRG had shown that Beach lacked—and could not reasonably obtain—evidence to prove an essential element of his claims because the crux of his claim was privileged. (See *Santa Clara Valley Water Dist. v. Century Indemnity Co.* (2023) 89 Cal.App.5th 1016, 1034–1035 [discussing a moving defendant's initial burden].) In any event, we can identify no abuse of discretion. (See *Doe v. Software One, Inc.* (2022) 85 Cal.App.5th 98, 103–104 [explaining that the weight of authority supports the abuse of discretion standard of review for rulings on evidentiary objections in the summary judgment context].)

In Beach's operative complaint,[4] he alleged that the December 6 mediation was scheduled more than a month in advance. Two days before the mediation Beach attended a "pre-mediation meeting" at JRG's request. During the "pre-mediation portion" of that meeting, JRG attorneys told Beach he could expect a settlement offer of $2.7 million to $3.5 million. The meeting then continued to topics unrelated to mediation—that Beach could obtain $9,332.74 per month tax free for the rest of his life or for 10 years, whichever was greater, if he accepted $2 million to settle his case to secure a net settlement of at least $1 million. Although he alleged that this financial advice was unrelated to mediation, he also alleged that he "rel[ied] solely" on those representations when he accepted the settlement offer provided to him at the December 6 mediation.

The undisputed facts presented at summary judgment were consistent with the foregoing factual allegations in Beach's operative complaint. In his response to JRG's separate statement, Beach admitted that he settled his case at a mediation on December 6 based on JRG's representations that a total settlement amount of $2 million could be parlayed into $9,332.74 per month, tax free, for life or for 10 years, whichever was greater. Disputing JRG's framing of the December 4 meeting, Beach represented that the December 4 meeting included a short mediation strategy session and a separate portion in which JRG advised him about structuring or annuitizing a settlement. In a declaration structured to respond to JRG's separate statement, Beach declared that "[a]nything remotely connected to mediation preparation took less than five minutes. The rest of the meeting dealt specifically and only with [his attorneys'] successful attempt to 'sell' [him] on an annuity that would cost [him] approximately $1 million and would pay [him] $9,332.74 tax[]free per month for the duration of [his] life or [10] years, whichever was longer." Beach elaborated that his attorneys' goal was "to convince [him] to accept

<hr />

[4] " '[T]he scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited to the claims framed by the pleadings.' " (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.)

[$2 million] in full settlement of the underlying case." Beach declared that he settled the case in reliance on his attorneys' representations.

In his appellate brief, Beach explains that the pre-mediation portion of the meeting included an exchange between himself and counsel about the amount he could expect to receive in settlement, and his belief that this was unsatisfactory because counsel had earlier advised him that his case was worth substantially more. The meeting then shifted to the sufficiency of a $1 million net settlement to provide him with the specified income through annuitization. Based on that conversation, Beach "didn't have to hear anything more. He didn't need to know why [his attorneys] wanted to settle a case" for millions less than they said it was worth. Beach relied on his attorneys' advice to approve the settlement.

In short, two days before the mediation Beach's attorneys gave him financial advice that he relied on in deciding whether to accept an otherwise unacceptable settlement offer in mediation.

*Cassel* controls our decision here. There, as alleged, during the mediation counsel misled and badgered the plaintiff until he consented to settle his case for less than counsel had agreed was appropriate. (*Cassel*, *supra*, 51 Cal.4th at p. 120.) Here, construing the summary judgment record in Beach's favor, counsel misled Beach two days before the mediation, inducing him to accept an otherwise unacceptable settlement offer in mediation. That the representations here were shortly before mediation rather than during it does not matter, because the mediation privilege extends to communications " 'materially related to the mediation.' " (*Id*. at p. 135.) We cannot reconcile Beach's claim that he relied on the advice to accept the mediation settlement offer with his contention that the advice was unrelated to mediation. Counsel's advice about the take-home value of potential settlement at a mediation two days later—advice on which the client relied in deciding to accept the mediation settlement offer—is materially related to the mediation.

7

Applying *Cassel*, the trial court correctly ruled that the mediation privilege precluded Beach from asserting claims based on alleged misrepresentations counsel made on December 4. Beach's appellate arguments depend on his challenge to that ruling, so he has not carried his appellate burden of demonstrating that the trial court erred. (*Golightly*, *supra*, 229 Cal.App.4th at p. 1519.)

Beach's remaining points are unhelpful.

Beach contends that his claims did not accrue until January 15, 2019, because JRG continued to mislead him until that date. But he does not articulate why the accrual date is material. He notes that the protections of section 1129, which he contends would have aided him here, went into effect between the mediation date and the claimed accrual date.[5] But he does not contend that section 1129's requirement to disclose and acknowledge the mediation privilege applies retroactively to a mediation and settlement that preceded section 1129's effective date.

We recognize that JRG's post-mediation statements tend to corroborate Beach's allegations about the erroneous advice he was given before mediation. But our decision today turns not on whether Beach can prove what was said to him before mediation, but on whether he may lawfully use what was said then as the foundation for his claim. And we do not understand him to be challenging the trial court's determination that post-mediation communications are not actionable for lack of a causal link between the post-mediation communications and the events at mediation. As the trial court explained,

---

[5] Section 1129 requires a disclosure and acknowledgment of the mediation privilege and includes an example of a sufficient acknowledgment, which provides among other things that "all communications between you and your attorney made in preparation for a mediation, or during a mediation, are confidential and cannot be disclosed or used (except in extremely limited circumstances), even if you later decide to sue your attorney for malpractice because of something that happens during the mediation." (§ 1129, subd. (d).)

Beach's reliance and damages occurred at the mediation, when he agreed to settle, so post-mediation statements did not cause his injuries.

Similarly, Beach states that the trial court did not base its decision on any failure on his part to provide sufficient evidence to establish causation under *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1235. But we understand this as a preemptive challenge to affirmance on a ground not invoked by the trial court, not as a challenge to the ground the trial court relied on.

### III. DISPOSITION

The judgment is affirmed. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
LIE, J.

WE CONCUR:

_____
GROVER, Acting P. J.

_____
WILSON, J.

*Beach v. Johnson, Rovella, Retterer, Rosenthal & Gilles, LLP*
H051523